FRANK KONECNY, Appellant, v. W. P. HOHENSCHUH, Appellee.

**DEAD BODIES:** Undertaker Permitting Wrongful Autopsy—Joint
1 Liability. If an undertaker knowingly permits a wrongful autopsy to be held in his undertaking establishment, he participates in the wrong, and is jointly liable therefor.

**TORTS:** Persons Liable—Lawful Act—Unintended Effect. The do-
2   ing of an act which is, in itself, perfectly lawful will not render
one liable as for a tort, simply because the unintended effect
of such act is to assist or enable another person to do such
wrong.

**DEAD BODIES:** Undertaker Permitting Wrongful Autopsy—Reli-
3   ance upon Hospital Physicians. An undertaker, receiving a dead
body from a hospital and allowing an autopsy in his establish-
ment by the hospital physicians, who had not secured consent
therefor from the decedent's relatives, had the right to assume
that said medical staff would not perform an unauthorized au-
topsy, and he was charged with no duty to ascertain whether
proper consent had been obtained for the autopsy.

*Appeal from Johnson District Court.*—R. P. HOWELL,
Judge.

SEPTEMBER 22, 1919.

REHEARING DENIED APRIL 13, 1920.

ACTION at law to recover damages upon a claim which
is sufficiently stated in the opinion. There was a trial to a
jury. At the close of the testimony, the court directed a
verdict for the defendant, and plaintiff appeals.—*Affirmed.*

*F. F. Messer* and *W. J. Baldwin*, for appellant.

*Dutcher, Davis & Hambrecht* and *Otto & Otto*, for ap-
pellee.

WEAVER, J.—The plaintiff is a resident of Johnson
County, Iowa, and the defendant is engaged in business, as
an undertaker and embalmer, at Iowa City, in that county.
The petition alleges that, on December 5, 1912, the mother
of plaintiff died in said county, under circumstances which
left plaintiff entitled to the custody and control of his said
parent's body, and to control its care and preparation for
burial; that, after her death, and without plaintiff's knowl-
edge or consent, that body of the deceased was removed to
the undertaking parlors of the defendant, who assumed to

receive it and the duty of caring for and preserving it for the plaintiff, but, instead of so doing, defendant, without right or authority, permitted said body to be dissected, mutilated, and parts thereof to be removed, all of which acts were done wrongfully and maliciously, and in reckless disregard of the plaintiff's right to receive the body in the condition in which it was when life departed therefrom.

Because of this trespass upon his rights, by the abuse and mutilation of his mother's body, by or with the consent of the defendant, plaintiff alleges that he has been made to suffer great mental injury and pain, and he demands recovery of damages. The alleged cause of action is pleaded in various counts, but what we have here stated suf- ficiently reveals the general nature of the plaintiff's claim.

Answering the petition, the defendant denies the same, and further says that the dead body was delivered to him by the State University Hospital of Iowa, with directions to embalm it, and with the information that said hospital, by its authorized agents, or surgeons, would make a post mor- tem examination thereof. He further says that he had no knowledge of the identity of the deceased person, was not present at the autopsy, and had nothing whatever to do with it; that the deceased was, in part, a county patient, and admitted to the hospital as such; and that the hospital staff had the right to make the examination. Further an- swering, he says, upon information and belief, that plaintiff consented to the examination; that the same was conducted in a decent and proper manner by the medical staff of the University Hospital, in the exercise of their regular and proper duties and functions as such.

The answer, as above recited, was not attacked by mo- tion or demurrer; but, plaintiff having joined issue there- on by reply, the parties proceeded to trial to a jury.

The facts, as they appear in the record without substan- tial dispute, are as follows: The deceased, Mary Konecny,

had, for some years, been a resident of Johnson County. She was a widow, with six children, all, except a married daughter, living together as a single family. The plaintiff, Frank Konecny, and his brother, Louis, were of age, but the remainder of the children were minors.

In October of 1912, the mother became ill, and entered the hospital of the Iowa State University for treatment, and continued there until her death, on December 5, 1912. At this time, and for a considerable period prior thereto, the defendant was an undertaker, doing business in Iowa City. He was also a licensed embalmer. For the transaction of his business, he maintained a building in the city, suitably fitted and arranged for that purpose. There were also other establishments in the city, in which other persons carried on a similar business.

It was the practice and custom of the hospital and its medical staff to hold autopsies upon the bodies of patients dying there, whenever the consent of the family or friends of the deceased could be obtained for that purpose. Such examinations were, in fact, held in perhaps three fourths of the cases of deaths occurring there. The hospital did not have suitable rooms or conveniences for such work, and its custom was, when a death occurred, and an autopsy was to take place, to send the body to one of the several under-taking establishments in the city to be embalmed, after which the medical staff of the University, or some one or more members thereof, would make the examination. On the day of the death of Mrs. Konecny, and within a short time after it occurred, the officer in charge at the hospital called up the defendant, informing him that a death had taken place there, and a post mortem examination was to be held, and inquired how soon he could take the body, and have it ready for the autopsy. He responded, in substance, that it could be done in the course of an hour. Thereupon, he sent his assistant, Sample, to attend to the matter. Following

instructions, Sample went to the hospital, received the body, took it to a room used for that purpose in defendant's building, and there embalmed it. Later, two or more members of the hospital medical staff went to the room where the body had been embalmed, and began their examination. In performing this work, they, or some of them, opened the body, and removed therefrom and examined some of the viscera. Neither the defendant nor Sample participated in or was present at this operation or examination. Before the examination was completed, the plaintiff, accompanied by one Murphy, another undertaker, appeared at defendant's place of business, and inquired if his mother's body was there, and, on learning the fact, asked for its delivery to him. There is dispute as to much of the conversation which ensued, but it seems to be conceded that defendant said, in substance, that a post mortem examination of the body was being held, and it would take some time to prepare it for such delivery; but, plaintiff, or Murphy, being insistent, defendant went to the door of the embalming room, and called out one of the physicians, with whom a short discussion was had. The body was then transferred to a receptacle brought by Murphy, and taken away by him.

Appellee's counsel concede that, if the post mortem examination of this body was made by the physicians without plaintiff's consent, the act constitutes a legal wrong, for which the law affords a remedy. It is also conceded that the fact whether such consent was given is in dispute, and that, if the question be a vital one in this case, the issue should have been submitted to the jury. They contend, however,—and that is the question with which we have to deal,—that, even assuming that no consent is proved, the record still makes no case against the defendant; and with that view we are disposed to agree.

There is no evidence fairly tending to show that defendant was present at or assisted in or took any part in

the autopsy. The most that can be said in this respect is that it took place in his building, and that

**1. DEAD BODIES: undertaker permitting wrongful autopsy: joint liability.** he knew such examination was contemplated by the physicians, and that it was being performed on his premises. If such examination was wrongful, and he, with knowledge of the wrong, furnished the perpetrators a room or place or conveniences for its performance, such aid and assistance might well be held sufficient to charge him with participation in the wrong, and therefore with joint liability. But the doing of an act which is, in it-

**2. TORTS: persons liable: lawful act: unintended effect.** self, perfectly lawful will not render one liable as for a tort, simply because the unintended effect of such act is to enable or assist another person to do or accomplish a wrong. The defendant had an unquestionable legal right to maintain a building or place in which to do business as an embalmer or undertaker. He had just as clear a right to

**3. DEAD BODIES: undertaker permitting wrongful autopsy: reliance upon hospital physicians.** permit the hospital and its physicians to use a room in his building as a place for holding post mortem examinations. He could reasonably and properly assume that the hospital authorities and its medical staff would not abuse such privilege by using it for an unauthorized autopsy. He was charged with no duty to supervise such use, or to ascertain at his peril in each instance whether proper consent had been obtained for the examination of a body brought or sent to his place by the hospital itself.

The record is barren of any testimony tending to show guilty knowledge or unlawful purpose or intent on part of defendant, and, in our judgment, it must be said there is a failure of proof of any act or omission on his part rendering him justly chargeable with damages for the wrong, if any, committed by the physicians. His only connection with the transaction was to receive and embalm the body, a very

proper service, which is not the ground of complaint in this action.

He received the body from the hospital; and, until someone appeared, disclosing a better claim of right or authority to control its care and disposition, he cannot be charged with wrong in recognizing the authority of the hospital to give directions for its care and keeping.

There was no evidence upon which the plaintiff was entitled to go to the jury, and the court did not err in directing a verdict for defendant. The conclusion thus reached renders quite immaterial other assignments of error, and we pass them without further discussion.

The judgment below is, therefore,—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.