STANLEY SWORSKI AND ANOTHER v. B. H. SIMONS AND ANOTHER.[1]

July 12, 1940.

No. 32,397.

[1]Reported in 293 N. W. 309.

*Levine & Levine,* for appellants.

*W. H. Lundstrom,* for respondent B. H. Simons.

*W. F. Odell,* for respondent Victor M. Weller.

PETERSON, JUSTICE.

Plaintiffs sue for wrongful interference with their right to the body of their son Clifford, who committed suicide in the Chaska county jail on the morning of May 21, 1938. No question is raised as to the right of both parents to maintain the action. Defendant Simons is the coroner of the county, and defendant Weller is an undertaker at Chaska. The complaint alleges that defendants without authority from plaintiffs unlawfully, willfully, and maliciously took possession of Clifford's dead body, trespassed on the body by unlawfully embalming it in violation of law, and refused plaintiffs the right to view the body. They claim damages for humiliation and mental suffering.

The defendant Simons admitted the possession of the body. He alleges that he took possession of the body as coroner of the county and denied that he had a possession or control of it "except for the purpose of his investigation and inquest as coroner and only to enable said defendant to properly and efficiently perform his official duties, and not otherwise." As such coroner he investigated and determined the cause of death, and issued the proper certificate.

The defendant Weller admitted the facts stated in the Simon's answer and alleged further that Clifford committed suicide in the county jail; that Clifford and his place of residence were then unknown to the sheriff; that the coroner legally took charge of the body; that the coroner, while he was legally in charge of the body, directed Weller to embalm

it; that while he, Weller, was in the course of embalming the body, the father appeared and directed Weller to complete the embalming and then deliver it to an undertaker of his own choice; that the father's instructions were carried out; and that he paid the defendant's charges.

Plaintiffs interposed a general denial.

The case came on for trial immediately after the trial of the companion case, Sworski v. Coleman, 208 Minn. 43, 293 N. W. 297.

The testimony showed that Clifford was incarcerated in a cell in the jail at Chaska shortly after midnight on May 20; that the next morning, May 21, the sheriff found him dead by hanging in his cell; that the sheriff then summoned the coroner; that the coroner examined the body; that he was of the opinion that Clifford died at about 1:00 a.m. from suicide by strangulation; and that he was satisfied that death was caused as stated without an autopsy. He executed a death certificate. The coroner testified that embalming was no part of his examination and that his findings had been completed before the embalming was done. He told the undertaker to embalm the body and take care of it.

The undertaker testified that the coroner directed him to embalm the body; that the purpose of the embalming was to preserve it; that he acted on the coroner's order and that he was not then looking to the parents for consent to embalm the body; that the father showed up when he had the body partly embalmed and informed him that he wanted their own undertaker in Minneapolis to take charge of the body; that thereupon Weller called their undertaker, a Mr. Rainville of Minneapolis, and made arrangements with him over the telephone in the presence of the father to complete the embalming; and that Rainville would then get the body and to pay his charges.

The father denied that any arrangement to compensate Weller was made and claimed that he explicitly told Weller that he would not pay for any work which he had done.

Although the answers did not allege as a defense that the embalming was for the purpose of giving decent burial to Clifford as an unknown person, defendants were permitted to go into that matter. They gave testimony to the effect that the boy's identity was unknown. In contradiction it was shown that one Strauch, a friend with whom Clifford had gone on a fishing trip and who was with him when he was arrested, was at the county jail looking for him early on the morning of the 21st and talked with the sheriff. Further, it was shown that Clifford's purse containing a state automobile driver's license giving his name, age, address, and other information required by statute, a conditional bill of sale under which Clifford bought the car which he used on the fishing trip, and other papers, were taken from him and were in the hands of the sheriff. The coroner knew of them. The sheriff called the Minneapolis police, who notified Clifford's parents. They went to Chaska and arrived there within a few hours after the police were called.

After the plaintiffs arrived in Chaska they went to the county jail, where they met the sheriff, coroner, undertaker, and Strauch. The father told them that he wanted to remove the body to an undertaker in Minneapolis. Then Weller told him that he had embalmed the body and claimed $37.50 for his services. Thereupon the father told him that he acted without authority and that he would not pay him. There was some delay. The father had to sign some papers, which were not introduced in evidence, before the parents were permitted to see their son's body. This was not denied or contradicted.

At the close of plaintiffs' evidence the defendants rested and moved for a directed verdict. The only question considered on the motion was whether the defendants had acted within the powers of the coroner. The court granted the motion, and the plaintiffs appeal from the order denying their motion for a new trial.

■ The complaint in this case is the same in its ultimate allegations as that considered in the leading case of Larson v. Chase, 47 Minn. 307, 310, 50 N. W. 238, 239, 14 L. R. A. 85, 28 A. S. R. 370, and the principles laid down in that case control here with respect to the rights of plaintiffs to the dead body of their son. In that case the action was brought to recover damages for the wrongful mutilation of the dead body of plaintiff's husband by dissection. We there held that the surviving wife had a legal right to the possession of the corpse for purposes of preservation and burial "and that any interference with that right, by mutilating or otherwise disturbing the body, is an actionable wrong." Further we held that the complaint, by alleging mental suffering as a distinct element of damage, stated a right to substantial, compensatory and not simply to nominal damages, where they are direct, proximate, and natural result of the alleged violation of the wrongful act. We said [47 Minn. 312]:

"Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of law, causes injury, he [the party injured] is entitled to recover all damages which are the proximate and natural consequence of the wrongful act. That mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated, is too plain to admit of argument."

See 3 Ann. Cas. 136. The parents in this case stand in the same rights with respect to their son's dead body that the widow in the cited case did to that of her dead husband.

The cause of action is primarily for mental suffering caused by improper dealing with and not the injury to the dead body. Restatement, Torts, § 868, comment b. Such improper dealing may consist of unauthorized interference with the corpse itself, Larson v. Chase, 47 Minn. 307, 312, 50 N. W.

238; Foley v. Phelps, 1 App. Div. 551, 555, 37 N. Y. S. 471, 474, where the court said: "The right is to the possession of the corpse in the same condition it was in when death supervened," or wrongful withholding of the corpse from those entitled to its possession, even though such withholding be only temporary and limited as to time, Jefferson County Burial Soc. v. Scott, 218 Ala. 354, 118 So. 644 (withholding for one day); 17 C. J. p. 1144, § 17, note 99; 15 Am. Jur., Dead Bodies, § 17.

It is not a defense to say that the embalming was beneficial and necessary. Although embalming is generally recognized as a proper service, Konecny v. Hohenschuh, 188 Iowa, 1075, 173 N. W. 901, no one but the person entitled to the dead body has the right to provide such service. He is entitled to the body in the condition it was in at death and to bury it in that condition without embalming if so advised. Here the evidence would sustain a finding not only of embalming without authority, but wrongful withholding of the body as well.

In Finley v. Atlantic Transport Co. 220 N. Y. 249, 115 N. E. 715, L. R. A. 1917E, 852, Ann. Cas. 1917D, 726, there was embalming of a body at sea to which no objection was made. On the contrary, it was claimed that by reason of such embalming the body could have been carried to port and delivered there to those entitled to it, in consequence of which interment at sea, after preparation of the body by embalming for such delivery, was held to be an actionable wrong. Here plaintiffs assert rights not in virtue of benefits caused by the embalming, but upon the grounds that the embalming itself was a wrongful and unauthorized act.

That the plaintiffs later had the body embalmed is no defense. The damage and hurt resulting from the wrongful acts of defendants were complete before plaintiffs had the body embalmed by their undertaker. Just how a subsequent embalming of the body by plaintiffs' undertaker operates to satisfy or wipe out the cause of action for mental suffering

and injured feelings resulting from defendants' prior trespass on and the withholding of the body, which plaintiffs had, has not been made to appear. If plaintiffs had not had the body embalmed by their own undertaker, there could be no question as to their right to recover. By having the body embalmed they did not release or relinquish the cause of action which they then had. Plaintiffs were entitled to recover if the jury adopted their version of the facts unless the acts were done by the coroner or under his direction with lawful authority.

■ The coroner stated that he had determined the cause of death by mere examination and that his function in that respect had been completed before he turned the body over to the undertaker. Hence there can be no valid claim here that the acts were under the authority of the coroner to conduct inquests as in Kingsley v. Forsyth, 192 Minn. 468, 257 N. W. 95. A coroner and those acting under his direction are liable to the parent for wrongful interference with the dead body of his son where the coroner acts without authority in law. Gurganious v. Simpson, 213 N. C. 613, 197 S. E. 163.

■ Defendants on the appeal have shifted the emphasis if not the grounds of their defense. While they do not say so, they in effect have abandoned all claims of defense under coroner's powers to conduct inquests and rest their defense on the power and duty of the coroner to bury unknown persons, claiming that the embalming was incident to the coroner's giving Clifford a decent burial as a person unknown. The applicable statute is 1 Mason Minn. St. 1927, § 956, which reads as follows:

"When any coroner holds an inquest upon view of the dead body of any person unknown, or, being called for that purpose, shall not think it necessary, on view of such body, that any inquest be held, he shall cause the body to be decently buried; and all expenses of the inquisition and burial shall be paid by the county in which such dead body is found."

The power and duty to provide the burial depended on whether Clifford was a person unknown. The evidence in this case made this a fact question for the jury, even if we adopt the view most favorable to defendants.

A person is not unknown within the meaning of the statute if his identity can be ascertained by reasonable inquiry. Provisions for the disposition of dead bodies of unknown persons to medical schools for dissection are quite common. These statutes have been construed, as they should be, that all means of information must be resorted to and reasonable inquiry must be made to ascertain the identity of the deceased before such a disposition by the possessor or receipt of the body by the person to whom it is delivered is justified. Burke v. New York University, 196 App. Div. 491, 188 N. Y. S. 123; Newman v. Stewart, 71 Misc. 1, 127 N. Y. S. 866.

The evidence demonstrated that by reasonable inquiry the authorities ascertained the parents and brought them to Chaska within a few hours to claim the body. The evidence available to the defendants—the driver's license, the conditional bill of sale, and the information that could be had from Strauch—pointed unerringly to such a result. The claim that Clifford was a person unknown is too flimsy to merit extended consideration. On the contrary, such evidence justified a finding that defendants acted in wanton and callous disregard of their duty and plaintiffs' rights. Such conduct should not be tolerated, much less can it be justified.

We are impressed with the fact that many of the witnesses were unwilling and disclosed a disposition to suppress the facts. In that situation the trial court has the power to facilitate the examinations and aid in eliciting the facts. Rulings were unnecessarily technical. On a retrial the court should lend its power to get at the truth.

Reversed and new trial granted.

HOLT, JUSTICE (dissenting).

I dissent. The coroner in virtue of 1 Mason Minn. St. 1927, § 956, was authorized to take charge of the body, and

it was his duty to give the body a decent burial. Embalming is now considered as pertaining to a proper preparation for burial. What search shall be made for relatives by a coroner is a matter of judgment of the official. Here was no mutilation of the body except such as usually made for embalming. I think a verdict was properly directed for the coroner, and likewise for the undertaker who did his bidding.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the views of Mr. Justice Holt. As to each of the defendants, the coroner and the undertaker:

"The record is barren of any testimony tending to show guilty knowledge or unlawful purpose or intent on part of defendant, and, in our judgment, it must be said there is a failure of proof of any act or omission on his part rendering him justly chargeable with damages for the wrong, if any, committed by the physicians. His only connection with the transaction was to receive and embalm the body, a very proper service, which is not the ground of complaint in this action.

"He received the body from the hospital; and, until someone appeared, disclosing a better claim of right or authority to control its care and disposition, he cannot be charged with wrong in recognizing the authority of the hospital to give directions for its care and keeping." Konecny v. Hohenschuh, 188 Iowa, 1075, 1080-1081, 173 N. W. 901, 903; Wilde v. Milwaukee Elec. Ry. & Light Co. 147 Wis. 129, 132, 132 N. W. 885, 886 (syllabus par. 3).

In no event could any damages be awarded against them beyond nominal damages, and in such cases we do not reverse. L'Hommedieu v. Wilfred Wolfson Co. 187 Minn. 333, 335, 245 N. W. 369, and cases there cited.

STONE, JUSTICE.

To me the case seems one for only nominal damages. So I cannot concur in a reversal.