Van Zandt v. Holy Redeemer Hospital

*Martin A. Durkin,* for plaintiff.

*Paul A. Bechtel,* for defendant Holy Redeemer Hospital.

*Israel N. Eisenberg,* for defendant Bergnes.

DI BONA, *J.,* December 18, 2001—This is an appeal taken by the defendants, Holy Redeemer Hospital and Manuel A. Bergnes M.D., from this court's denial of post verdict motions. This case was tried before this court and a jury in January of 2001. After a two-day trial, the jury rendered a verdict in favor of the plaintiff and against the defendants in the amount of $300,000. Negligence was apportioned 75 percent against the hospital and 25 percent against the doctor. Post verdict motions were filed by both defendants and were denied on May 8, 2001. Plaintiff's motion for delay damages was granted on the same date and the verdict was molded to reflect the inclusion of delay damages in the amount of $23,798.39. These appeals followed.

The plaintiff filed the instant negligence action against the defendants claiming that the defendants violated the express wishes of the plaintiff and the plaintiff's decedent when it permitted the Lion's Eye Bank of the Greater Delaware Valley to harvest the eyes of the plaintiff's decedent against the plaintiff's express refusal to allow such a procedure. In plaintiff's amended complaint, plaintiff stated that she was the only child of the decedent, that she had refused to allow the harvesting of her

mother's eyes following her death, and that the issuance of a post-mortem report by the defendants indicating that the decedent's eyes had been removed was negligent conduct which caused plaintiff emotional damages. The evidence adduced at trial indicated that the Eye Bank had contacted the plaintiff and requested the donation of her deceased mother's eyes. Plaintiff, due to religious beliefs and other personal considerations, refused to permit the harvesting of her mother's eyes. Several months later, the plaintiff ordered and received a copy of the post-mortem report, signed by the defendant, Bergnes, which indicated that the decedent's eyes had, in fact, been harvested. Thereafter, the defendant, Bergnes, signed an amended post-mortem report, authored by legal counsel to the defendant hospital, which directly contradicted the original report and stated that the eyes had not been examined or removed. Plaintiff claimed that she had suffered nightmares and other psychological damages upon learning that her mother's eyes had been harvested against her instructions. The jury found that the conduct of the defendants was a substantial factor in causing plaintiff's emotional injuries and awarded plaintiff the sum of $300,000.

On appeal, the defendants' raise numerous issues of alleged trial court error, the first of which is that this court erred in failing to grant defendants' motion for judgment n.o.v. In the recent case of *Kit v. Mitchell,* 771 A.2d 814 (Pa. Super. 2001) the Superior Court held that:

"Our review of a trial court's order granting judgment n.o.v. is limited to determining whether the trial court

abused its discretion or committed an error of law that controlled the outcome of the case. *Campo v. St. Luke's Hospital,* 755 A.2d 20, 23 (Pa. Super. 2000). Our Supreme Court summarized the relevant considerations regarding the grant of judgment n.o.v. as follows:

"In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.

"There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

"*Moure v. Raeuchle,* 529 Pa. 394, 604 A.2d 1003, 1007 (1992). (citations and quotation marks omitted) With

these principles in mind, we turn to the issues appellant presents to this court." 771 A.2d at 818.

In the instant case, defendants contend that they owed no duty to the plaintiff for which they could have been negligent in the performance of. Defendants also contend that the plaintiff did not prove that her mother's eyes had actually been removed. In viewing the evidence in the light most favorable to the plaintiff as verdict winner, this court is mindful of the precedent established in *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970) wherein it was held:

"As indicated above, section 868 of the Restatement provides that one who 'wantonly mistreats' or, acting without privilege, 'intentionally withholds' the body of a decedent is liable in tort to the member of the decedent's family who is entitled to the disposition of the body. Comments a and b to section 868 state that such a cause of action 'exists although there has been no harm except such harm to the feelings as is inseparable from the knowledge of the defendant's conduct . . . The cause of action is primarily for mental suffering caused by the improper dealing with the body. It includes also the right to recover damages for physical harm resulting from such mental suffering.'

"Other jurisdictions have recognized claims for mental suffering caused by the defendant's wanton or intentional mishandling of the body of the decedent. Such mishandling of a body has been found to encompass, inter alia, the unlawful interment or disinterment of a body, intentional interference with a burial, the wanton

mutilation or unauthorized embalming of a corpse, and other intentional, reckless or wanton acts likely to cause severe emotional distress. See *Sanford v. Ware,* 191 Va. 43, 60 S.E.2d 10 (1950); *Gostkowski v. Roman Catholic Church,* 262 N.Y. 320, 186 N.E. 798 (1933); *Stephens v. Waits,* 53 Ga. App. 44, 184 S.E. 781 (1935); *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937); *Sworski v. Simons,* 208 Minn. 201, 293 N.W. 309 (1940); and *Brownlee v. Pratt,* 77 Ohio App. 533, 68 N.E.2d 798 (1946). After a review of the cases in this area, one leading authority has concluded that a distinct majority of the jurisdictions hold that 'where the defendant, not privileged by statute, intentionally or recklessly invades another's interest in the body of a deceased relative by conduct which it is highly probable will cause acute and poignant emotional distress, he becomes liable therefor although no other interest of the plaintiff is invaded.' Harper and James, The Law of Torts, §9.4, p. 675 (1956). While the decisions in other jurisdictions have frequently spoken of the next of kin's property or quasi-property rights in the body of the decedent, the underlying, and we believe real, issue is the right of a decedent's nearest relatives to protection against intentional, outrageous or wanton conduct which is peculiarly calculated to cause them serious mental or emotional distress. See *Stephens v. Waits, supra; Gadbury v. Bleitz,* 133 Wash. 134, 233 P. 299 (1925); and Prosser, 'Intentional Infliction of Mental Suffering: A New Tort,' 37 Michigan Law Review 874 (1939)." 437 Pa. 377-78, 263 A.2d at 120.

Plaintiff established at trial that she was the only child and relative of the decedent. She also established, through

the admission of the defendant's in the first post-mortem report, that the decedent's eyes had been removed. Viewed in the light most favorable to the plaintiff, this evidence was sufficient to submit the case to the jury. The defendants were not entitled to judgment as a matter of law and the verdict for the plaintiff was not beyond peradventure. The defendants' motions for compulsory nonsuit, directed verdict and for judgment n.o.v. were, therefore, denied.

Next, the defendants contend that the trial court erred in failing to award a mistrial, and thereafter a new trial, due to the improper references to the word "insurance" during the trial. Specifically, during a videotaped deposition of the defendant, Bergnes, the plaintiff's counsel, questioned the witness on his willingness to amend the post-mortem report after "your insurance company" issued a report in this matter. (See N.T. 1-4-01 p. 48.) Both counsel agreed to edit this reference out during the replay of the video to the jury; however, it was not edited out as agreed, and the jury heard the actual reference to insurance. The plaintiff's counsel again referred to the word insurance in his closing argument when referring to risk managers as "the insurance people." (See N.T. 1-5-01 p. 227.) In the case of *Price v. Guy,* 558 Pa. 42, 735 A.2d 668 (1999), the Supreme Court reviewed the standards relating to the references to insurance in negligence suits wherein it stated:

"The Superior Court correctly ascertained the general rule that, in a negligence suit, evidence that a *defendant* carries liability insurance is inadmissible, with certain

narrow exceptions, due to the fact that it is prejudicial to the defendant and generally irrelevant to the real issues in the case. See *Trimble v. Merloe,* 413 Pa. 408, 410, 197 A.2d 457, 458 (1964)." 735 A.2d at 671. (emphasis in original)

This court found that the first reference to the word insurance was inadvertent and was mistakenly shown to the jury in the videotape. This reference was cured by the court when it gave the jury a curative instruction on January 4, 2001 at page 51. In addition, the reference to "insurance people" was not a direct reference to the defendants carrying liability insurance coverage and was, therefore, permitted. This issue of alleged trial court error was, therefore, denied.

Next the defendants contend that this court erred in denying the defendants' motion in limine regarding the presentation of damages evidence by the plaintiff for emotional harm. Defendants contend that due to pretrial rulings of Judge Arnold New, the rule of concurrent jurisdiction prohibited the plaintiff from introducing evidence on the types of emotional damages suffered by the plaintiff. Specifically, Judge New ruled that plaintiff's claims for punitive damages and for negligent infliction of emotional distress were dismissed. Judge New did not dismiss plaintiff's claims against the defendants for negligence. At trial, the plaintiff sought to prove the types of emotional damages suffered after learning that her mother's eyes had been harvested against her instructions. Plaintiff was permitted to testify about being devastated at the news, having trouble sleeping and suffer-

ing from recurrent nightmares. This type of emotional harm is the proper subject of damages for the negligent conduct of the defendants. Under the holding of *Papieves v. Kelly, supra,* and the Restatement of Torts, proof of this type of damages is proper and admissible. The defendants' motion in limine was properly denied.

The defendants also assert that the trial court erred in denying a motion in limine regarding the plaintiff's production of evidence and proceeding on the theory that the defendants had "covered up" the removal of the decedent's eyes. Defendants contend that the motion should have been granted since Judge New had denied the plaintiff's request to amend the complaint to include a cause of action for the alleged "cover-up." At trial the plaintiff was permitted to present evidence that the defendant, Bergnes, had prepared an initial post-mortem report which indicated that the decedent's eyes had been removed. At the insistence of the defendant's legal counsel, the post-mortem report was amended to indicate that the decedent's eyes had not been removed, and Dr. Bergnes was asked to sign this report. It was clear to this court and to the jury that one of these reports was false. Whether one refers to this type of deceitful conduct as covering up or as misleading, or as blatantly false, the plaintiff was properly permitted to introduce evidence of this conduct. Its admission was proper to prove the defendants' negligence and was not prohibited under the concurrent jurisdiction rule and the pretrial ruling of Judge New.

Finally, the defendants claim that this court erred in failing to grant the remittitur requested by the defendants.

In the recent case of *Goldberg ex rel. Goldberg v. Isdaner,* 780 A.2d 654, 662-63 (Pa. Super. 2001), the Superior Court reviewed the standards for granting a remittitur and held that:

"In its last two interrelated claims, Jeanes Hospital argues the trial court erred in failing to either grant its motion for a new trial or remittitur since the verdict was clearly excessive, not warranted by the evidence and the product of sympathy.

"The court is not warranted in setting aside, reducing, or modifying verdicts for personal injuries unless unfairness, mistake, partiality, prejudice, or corruption is shown, or the damages appear to be grossly exorbitant. The verdict must be clearly and immoderately excessive to justify the granting of a new trial. The amount must not only be greater than that which the court would have awarded, but so excessive as to offend the conscience and judgment of the court. *Toogood v. Rogal,* 764 A.2d 552, 559 (Pa. Super. 2000).

"A remittitur may only be granted where the trial court determines that the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption and articulates the reason supporting a reduction of the verdict. *Haines v. Raven Arms,* 536 Pa. 452, 640 A.2d 367, 369 (1994), supplemented by, 539 Pa. 401, 652 A.2d 1280 (1995). The trial court cannot simply grant a remittitur, it can suggest or recommend one to the affected party, and, if refused, the court must grant a new trial. *Refuse Management System Inc. v. Consolidated Recycling & Transfer Systems*

*Inc.,* 448 Pa. Super. 402, 671 A.2d 1140, 1149 (1996). Once the trial court determines that the jury award is under the law and articulates the reasons for its determination, the award winner has the option of accepting the recommended remittitur or, in the alternative, choosing to undergo a new trial. *Id.* It is within the discretion of the trial court to grant a new trial because the verdict is excessive. *Petrasovits v. Kleiner,* 719 A.2d 799, 806 (Pa. Super. 1998). We will not disturb the trial court's refusal to grant a new trial on the grounds that the verdict is excessive unless the court clearly abused that discretion. *Id.*"

In the instant case, there is no evidence that the jury's verdict was the product of partiality, prejudice, mistake or corruption. This court cannot find that the award of $300,000 in damages is grossly exorbitant under the facts of the instant case. The motion for remittitur was, therefore, denied.

For all of the foregoing reasons, the defendants' post verdict motions were denied. The verdict of the jury should stand accordingly.