Heath GOLDBERG, A Minor, by and Through His Parents and Natural Guardians, Mindy and Michael GOLDBERG, and Mindy and Michael Goldberg as Administrators of the Estate of Blake Goldberg, and Mindy and Michael Goldberg, in Their Own Right, Appellees,

v.

Neil ISDANER, M.D., Linda Chan, M.D., Appellees,

Jeanes Hospital, a/k/a Jeanes Hospital Auxiliary (Six Cases).

Appeal of: Jeanes Hospital.

Heath Goldberg, A Minor, by and Through His Parents and Natural Guardians, Mindy and Michael Goldberg, Appellee,

v.

Neil L. Isdaner, M.D., P.C., Appellee (Six Cases).

Appeal of: Mindy and Michael Goldberg.

Appeal of: Neil L. ISDANER, M.D. and Neil L. Isdaner, M.D. P.C.

Superior Court of Pennsylvania.

Argued March 21, 2001.
Filed June 19, 2001.

---

**11.** Rule 2501(a) provides:

After the argument of a case has been concluded or the case has been submitted, no brief, memorandum or letter relating to the case shall be presented or submitted, either directly or indirectly, to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of the argument.
Pa.R.A.P. 2501(a).

Sheila A. Haren, Philadelphia, for Jeanes Hospital.

Paul E. Peel, Plymouth Meeting, for Isdaner.

Steven J. Cooperstein, Philadelphia, for Goldberg.

Before: FORD ELLIOTT, MONTEMURO * and BECK, JJ.

BECK, J.**

¶ 1 These consolidated appeals arise from an order of the trial court which denied in part motions for post-trial relief filed by Neil L. Isdaner, M.D., Neil L. Isdaner, M.D., P.C., and Jeanes Hospital. The order also entered judgment in favor of Heath Goldberg, and Mindy and Michael Goldberg, in their own right and as administrators of the estate of Blake Goldberg. For the reasons that follow, we affirm in part and reverse in part.

---

\* Retired Justice assigned to Superior Court.
\*\* Justice Montemuro did not participate in the decision of this matter.

¶ 2 The trial court summarized the factual background of this case as follows: Plaintiff Mindy Goldberg (Mrs. Goldberg) had been under Defendant Dr. Neil L. Isdaner's (Dr. Isdaner) gynecological and obstetrical care throughout her pregnancy. Dr. Isdaner's office was located in the Stapeley building, on Defendant Jeanes Hospital's Campus. During Mrs. Goldberg's first appointment, she and her husband questioned Dr. Isdaner extensively about whether he could capably handle multiple births. Dr. Isdaner assured Plaintiffs he was capable and discussed delivery with them. Defendant informed Plaintiffs deliver would occur at Jeanes Hospital and provided them with a brochure entitled "We Believe in Great Beginnings—The Maternity Suite at Jeanes." The brochure prominently listed Dr. Isdaner as a member of Jeanes' "team of physicians."

On November 20, 1995, Mrs. Goldberg experienced bloody discharge. She immediately called Dr. Isdaner's office and was referred to Jeanes Hospital where "they would check to see if everything was okay." Mrs. Goldberg was admitted to Jeanes Hospital at approximately 12:15 p.m. At the hospital, a nurse determined she was having contractions. An ultrasound performed at 4:00 p.m. by Defendant Linda Chan (Dr. Chan) revealed Mrs. Goldberg was high risk for either incompetent cervix or pre-term labor. Dr. Chan recommended administering a tocolytic drug to forestall labor and a steroid hoping to accelerate maturation of the babies' lungs. Said drugs were not administered until nearly 6:00 p.m.

Dr. Isdaner was informed of Mrs. Goldberg's condition throughout the day, however, he did not arrive at Jeanes Hospital until after 7:30 p.m. Although the doctor testified he had canceled his appointments on November 20, 1995, he could never account for his whereabouts between 12:15 p.m., when Mrs. Goldberg was admitted to Jeanes Hospital, and 7:30 p.m., the earliest time he could have arrived at same. Furthermore, once at the hospital, Dr. Isdaner did not see Mrs. Goldberg immediately. It was not until some time between 9:00 p.m. and 9:30 p.m. that he first evaluated her condition. Between 11:00 p.m. and 12:10 a.m., Mrs. Goldberg's water broke and Dr. Isdaner performed an emergency cesarean section at 1:00 a.m. Infants Heath and Blake Goldberg were transferred at their parents' request to Children's Hospital around 5:00 a.m. where Blake Goldberg died three days later from complications related to premature birth. Heath Goldberg remained in Children's Hospital for three months and developed sepsis, brain damage, cysts and ultimately cerebral palsy, also all resulting from premature birth.

Trial Court Opinion, 9/26/00, at 1–3. (citations to record omitted).

¶ 3 Mindy and Michael Goldberg instituted this medical malpractice action against Dr. Isdaner, Dr. Chan and Jeanes Hospital alleging that the defendants failed to prevent the premature birth of the Goldberg's twins, Heath and Blake. The Goldbergs also alleged the defendants were negligent during the delivery of the twins. Trial commenced on January 24, 2000. The jury returned a verdict in favor of the Goldbergs and against Dr. Isdaner and Jeanes Hospital, determining that Dr. Isdaner was 100% negligent and that Dr. Isdaner was Jeanes Hospital's ostensible agent. The jury found Dr. Chan not negligent. The jury awarded damages as follows: $6,000,000.00 to Heath Goldberg; $625,000.00 to the estate of Blake Goldberg; and $648,000.00 to Mindy and

Michael Goldberg. These appeals followed.

¶ 4 In their appeal, the Goldbergs argue the trial court erred in failing to grant them delay damages based on the jury's award for reimbursement of medical expenses incurred by their son Heath. The trial court found that Pa.R.Civ.P. 238 does not provide for delay damages to be awarded where the underlying claim is for reimbursement of medical expenses. We agree.

■ ¶ 5 Initially, we note that we will not reverse the trial court's decision regarding the imposition of delay damages absent an abuse of discretion. *Shamnoski v. PG Energy,* 765 A.2d 297 (Pa.Super.2000). Rule of Civil Procedure 238(a)(1) provides that "at the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury...."

¶ 6 In *Anchorstar v. Mack Trucks, Inc.,* 533 Pa. 177, 620 A.2d 1120 (1993), our Supreme Court noted that a literal and non-expansive interpretation has normally, and quite properly, been accorded to Rule 238, allowing delay damages to be awarded only in cases falling clearly within the purview of the "bodily injury, death or property damage" requirement. In *Anchostar,* Mrs. Anchorstar sought delay damages on her claim for loss of consortium. The Court affirmed the trial court's denial of delay damages, explaining that while a loss of consortium claim stems from the spouse's bodily injury, it is nevertheless a separate and distinct claim. The Court noted that one who has suffered a loss of consortium has not sustained a bodily injury but rather has experienced an injury to marital expectations.

■ ¶ 7 Likewise, in the present case Mr. and Mrs. Goldberg have not suffered a bodily injury, death or property damage. The plain language of Rule 238 clearly provides for such damages to be awarded only where the plaintiff seeks monetary compensation for "bodily injury, death or property damage." The Goldbergs have suffered a financial loss due to money they have expended to pay for medical expenses for their son Heath's injuries and Blake's death. As with the loss of consortium claim in *Anchorstar,* the Goldberg's claim stems from bodily injuries of other persons. Like the situation in *Anchorstar,* their claim is separate and distinct. We find no abuse of discretion on the part of the trial court in holding that, under the clear and express language of Rule 238, delay damages are not applicable to the Goldberg's claim for monetary damages for their sons' medical expenses.

¶ 8 In its cross-appeal Jeanes Hospital presents four issues for our review. It first argues that the trial court erred in refusing to grant a directed verdict in its favor and claims it is entitled to judgment notwithstanding the verdict because there was no evidence to support that Dr. Isdaner was an ostensible agent of the hospital. Jeanes Hospital submits that the Goldbergs failed to present any evidence that they looked to the hospital, and not Dr. Isdaner, for care and treatment. It also submits that the Goldbergs presented no evidence that the hospital held Dr. Isdaner out as its agent.

■ ¶ 9 In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must "consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to ... the verdict winner." *Walker v. Grand Central Sanitation, Inc.,* 430 Pa.Super. 236, 634 A.2d

237, 240 (1993). "[O]ur standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical." *Brown v. Philadelphia College of Osteopathic Medicine,* 760 A.2d 863, 868 (Pa.Super.2000). "We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.1999). Further, "the standard of review for an appellate court is the same as that for a trial court." *Ferry v. Fisher,* 709 A.2d 399, 402 (Pa.Super.1998).

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Campo v. St. Luke's Hospital,* 755 A.2d 20, 23 (Pa.Super.2000).

¶ 10 Under the doctrine of ostensible agency, a hospital may be held liable for the negligent acts or omissions of an independent doctor. Pennsylvania courts have determined that the two factors relevant to a finding of ostensible agency are: (1) whether the patient looks to the institution, rather than the individual physician for care and (2) whether the hospital 'holds out' the physician as its employee. *McClellan v. HMO,* 413 Pa.Super. 128, 604 A.2d 1053, 1057 (1992). A holding out occurs "when the hospital acts or omits to act in some way which leads the patient to a reasonable belief he is being treated by the hospital or one of its employees." *Capan v. Divine Providence Hospital,* 287 Pa.Super. 364, 430 A.2d 647, 649 (1980).

¶ 11 When considering the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the Goldbergs, we find the trial court did not err or abuse its discretion in denying the Jeanes Hospital's motion for judgment n.o.v. The trial court found the following facts were sufficient for the jury to conclude an ostensible agency relationship existed:

First is Dr. Isdaner's office location. Defendant's office is located on Jeanes Hospital's campus. In fact, one must "drive underneath the canopy of Jeanes Hospital" to reach it. Second, Plaintiff, Mindy Goldberg, signed several consent forms which indicate an affiliation with Jeanes Hospital. Third, Defendant Dr. Isdaner gave Mrs. Goldberg a brochure entitled "We Believe in Great Beginnings—The Maternity Suite at Jeanes" during one of her early prenatal visits which assured her said Hospital was expert in handling high-risk maternity patients and babies. The brochure explains Jeanes Hospital's maternity services and boasts of an "experienced and widely respected *team of physicians.*" Prominently included in its list of "team" physicians is Dr. Neil Isdaner. Defendant Hospital makes no distinction nor explains the difference between doctors who are employed versus those who merely have staff privileges. Fourth, said brochure was approved by Jeanes Hospital. Dr. Lawrence Freedman, chair of Jeanes' Department of Obstetrics [and] Gynecology includes Dr. Isdaner as a member of Jeanes' physician team. Dr. Freedman further

acknowledges Jeanes makes no distinction between team members who are independent contractors and those who are salaried employees. Fifth, Plaintiff's own testimony shows she was never informed of Dr. Isdaner's status as an independent contractor. Moreover, Dr. Isdaner's actions on November 20, 1995, reinforced Plaintiffs' belief that doctor and hospital were acting as a "team." Dr. Isdaner's office referred the Goldbergs to Jeanes Hospital around noon. Throughout the day Jeanes employees cared for Mrs. Goldberg. Dr. Isdaner never appeared. Trial Court Opinion, 9/26/00, at 6–7.

¶ 12 Based on the above, the jury clearly could have found that Jeanes Hospital held out Dr. Isdaner as its employee. Additionally, the jury could have concluded that Mrs. Goldberg looked to Jeanes Hospital rather than Dr. Isdaner himself for treatment. The evidence raised the inference that Mrs. Goldberg looked to Jeanes Hospital and its "team" of physicians, which included Dr. Isdaner, for the overall management of her care.

¶ 13 Jeanes Hospital makes much of the fact that Mindy Goldberg did not specifically testify that she believed she was being treated by the hospital and not Dr. Isdaner. However, as the Goldbergs aptly point out a direct statement by the plaintiff that she was looking to the institution for care, rather than to the individual physician, is not the *sine qua non* for establishing an ostensible agency relationship. For example, in *Capan, supra,* we determined that the trial court had erred in denying the appellant's proposed point for charge embodying the Restatement (Second) of Torts § 429 (1965) because the lower court took away from the jury the issue of ostensible agency. Our Court determined that the trial court's action was improper because the jury could reason-

ably have determined that both of the factors relevant to a finding of ostensible agency were present based on the evidence, which did not include a statement from the decedent that he relied on the hospital rather than the doctor for treatment.

¶ 14 In *Simmons v. St. Clair Memorial Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984), the decedent was brought to the emergency room by his father. The hospital notified the on-call staff psychiatrist who admitted the decedent to the psychiatric unit. Following his discharge, the decedent continued to be treated by the same psychiatrist. During a subsequent admission to the psychiatric unit of the hospital, five months later, arranged by the decedent's psychiatrist, the decedent committed suicide. Our Court concluded that the evidence of record did raise a factual issue concerning the ostensible agency of the doctor. *Id.* at 874. As with *Capan,* the harmed party in *Simmons,* the decedent, obviously did not testify that he looked to the institution, rather than the individual physician for care. These cases demonstrate that the factors relevant to a finding of ostensible agency may be established through inferences derived from the evidence.

¶ 15 Under all of the circumstances, we find that the jury could have concluded that Mindy Goldberg looked to the hospital for care and that the hospital "held out" Dr. Isdaner as its employee. Thus, we find no error with the trial court's denial of Jeanes Hospital's motion for judgment n.o.v.

¶ 16 Next, Jeanes Hospital argues that the trial court erred in allowing an inconsistent verdict sheet to be presented to the jury. It maintains the verdict sheet was inconsistent because although the jurors determined that the hospital's conduct was not a substantial factor in causing harm,

the jurors had no way of knowing that because they found against Dr. Isdaner, the hospital could still be liable for Dr. Isdaner's conduct. Jeanes Hospital argues that because it is unclear whether the jury intended for the hospital to be responsible for any portion of the verdict, we should grant it a new trial. We agree with the Goldbergs and the trial court that this issue has been waived.

¶ 17 In order to preserve an issue for post verdict relief and subsequent appellate review, a party is required to make a timely and specific objection before the trial court at the appropriate stage of the proceedings. Pa.R.Civ.P. 227.1(b). Failure to object will result in waiver. *Burnhauser v. Bumberger*, 745 A.2d 1256, 1259 (Pa.Super.2000). Jeanes Hospital did not object to the verdict sheet before it was presented to the jury. In fact, the verdict sheet was presented to the trial court by agreement of counsel, including counsel for Jeanes Hospital. If a party fails to object to the wording of a special interrogatory regarding a theory or theories of liability before the case goes to the jury for deliberations, the issue is waived on appeal. *City of Philadelphia Police Dept. v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993). Moreover, following the jury's verdict, Jeanes Hospital raised no objection. Accordingly, to the extent the verdict sheet and verdict itself were inconsistent as Jeanes Hospital argues, this issue is waived.

¶ 18 Even absent waiver, however, this issue has no merit. During trial, the Goldbergs presented evidence attempting to establish that Jeanes Hospital was liable based on the negligence of the nurses who were the hospital's employees and/or on the negligence of its ostensible agent, Dr. Isdaner. The jury found that Jeanes Hospital's employees had been negligent but that their negligence was not a substantial factor in causing Blake's and Heath's injuries. Even though the jury made this determination, it found that Dr. Isdaner was an ostensible agent of the hospital. There was nothing inconsistent about the format of the verdict sheet or the jury's verdict. Contrary to Jeanes Hospital's assertion the jury was aware that if they found against Dr. Isdaner, the hospital could still be liable for Dr. Isdaner's conduct. The trial court instructed the jurors as such. N.T., Trial, 2/10/00, at 1723–1724.

¶ 19 In its last two inter-related claims, Jeanes Hospital argues the trial court erred in failing to either grant its motion for a new trial or remittitur since the verdict was clearly excessive, not warranted by the evidence and the product of sympathy.

> The Court is not warranted in setting aside, reducing, or modifying verdicts for personal injuries unless unfairness, mistake, partiality, prejudice, or corruption is shown, or the damages appear to be grossly exorbitant. The verdict must be clearly and immoderately excessive to justify the granting of a new trial. The amount must not only be greater than that which the court would have awarded, but so excessive as to offend the conscience and judgment of the Court.

*Toogood v. Rogal*, 764 A.2d 552, 559 (Pa.Super.2000).

¶ 20 A remittitur may only be granted where the trial court determines that the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption and articulates the reason supporting a reduction of the verdict. *Haines v. Raven Arms*, 536 Pa. 452, 640 A.2d 367, 369 (1994), *supplemented by* 539 Pa. 401, 652 A.2d 1280 (1995). The trial court cannot simply grant a remittitur, it can suggest or recommend one to the af-

fected party, and, if refused, the court must grant a new trial. *Refuse Management Systems, Inc. v. Consolidated Recycling & Transfer Systems, Inc.*, 448 Pa.Super. 402, 671 A.2d 1140, 1149 (1996). Once the trial court determines that the jury award is under the law and articulates the reasons for its determination, the award winner has the option of accepting the recommended remittitur or, in the alternative, choosing to undergo a new trial. *Id.* It is within the discretion of the trial court to grant a new trial because the verdict is excessive. *Petrasovits v. Kleiner*, 719 A.2d 799, 806 (Pa.Super.1998). We will not disturb the trial court's refusal to grant a new trial on the grounds that the verdict is excessive unless the court clearly abused that discretion. *Id.*

¶ 21 In its argument, Jeanes Hospital does not delineate what particular award it believes is excessive. However, the evidence adduced at trial clearly supports the jury's awards to Mindy and Michael Goldberg, the estate of Blake Goldberg and Heath Goldberg. Mr. and Mrs. Goldberg received a verdict in their favor of $642,000.00 to compensate them for medical costs for Heath. Clearly, the jury's verdict was not excessive where the parties stipulated that Heath's medical costs were $650,446.54. With regard to Blake, the jury's verdict of $625,000.00 was supported by evidence which demonstrated that Blake's earning capacity was between $1,078,000.00 and $2,053,000.00. Finally, the jury's $6,000,000.00 verdict in favor of Heath Goldberg is also rationally related to the evidence produced at trial and was not excessive. Heath spent the first three months of his life in the hospital, during which he developed respiratory problems, hemorrhages, gastroesphageal reflux and infections. He suffers from permanent cerebral palsy and has undergone surgery to alleviate the problems with his muscle tone

abnormality associated with the cerebral palsy. Moreover, he will not be able to walk on his own. Additionally, Heath suffers from seizures and delays in his cognitive skills. As a result of Heath innumerous health problems he will need physical, occupational and speech therapies for the remainder of his life. Evidence showed that costs for Heath's lifetime care are estimated to be $6,400,000.00 and his lost earning capacity was shown to be as low as $1,731,000.00 and as high as $3,131,000.00. These figures, coupled the compensation for the pain and suffering Heath has and will continue to endure supports the jury's verdict. The trial court found that the verdict awarded was well within the plaintiffs' proffered amounts for lost wages, medical expenses, pain and suffering and other life expectancy figures. Our review of the record supports the trial court's conclusion. Thus, we cannot find that the trial court erred when it declined to grant a new trial or issue a remittitur.

¶ 22 In his cross-appeal, Dr. Isdaner claims the trial court erred by *sua sponte* refusing to mold the verdict, thus reducing the amount payable by the Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA) by the amount of insurance which the Goldbergs received from other sources. The Goldbergs conceded that PPCIGA was entitled to the setoff. However, the trial court ruled that PPCIGA was not entitled to the offset and failed to mold the verdict accordingly. The trial court's order was erroneous. Recently, our Court has held that under the non-duplication provision of the PPCIGA Act, the PPCIGA can offset medical costs covered by another insurance company from its pay out of damages to the injured party. *Panea v. Isdaner*, 2001 PA Super. 108, 773 A.2d 782; *Strickler v. Desai*, 768 A.2d 862 (Pa.Super.2001). We, therefore, reverse that portion of the

judgment which denied the Dr. Isdaner's motion to mold the verdict. We remand to mold the verdict by reducing the amount payable by the PPCIGA to reflect the amount of health insurance the Goldbergs received from other sources.

¶ 23 Affirmed in part; reversed in part. Remanded for proceedings consistent with this Opinion.