**TY–BUTTON TIE, INC., Appellant,**

v.

**KINCEL AND CO., LTD., and Joseph Marrongelle, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 11, 2002.

Filed Dec. 2, 2002.

Reargument Denied Feb. 5, 2003.

---

Donald A. Semisch, Willow Grove, for appellant.

Paul A. Barrett, Scranton, for appellees.

Before: McEWEN, P.J.E., FORD ELLIOTT and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellant Ty–Button Tie, Inc. appeals from the judgment entered on January 2, 2002, in the Court of Common Pleas of Bucks County, following the trial court's denial of Appellant's Post–Trial Motion for Judgment *Non Obstante Verdicto* or for a New Trial. Upon review, we affirm the judgment.

¶ 2 The facts and procedural history of this case are as follows: Mr. Vincent Pileggi, a landscaper by trade, and his wife, a seamstress, designed a tie that would stay affixed to the wearer's shirt, entitled the "Ty–Button" tie. Mr. Pileggi took his design to a patent attorney, who submitted the design for two United States patents on the invention. Mr. Pileggi marketed his "patent-pending" product to manufacturers, two of whom produced the ties. Thereafter, Mr. Pileggi formed Appellant corporation, Ty–Button Tie, Inc.

¶ 3 After Mr. Pileggi formed Appellant corporation, a family member of Mr. Pileggi's gave a sample tie to an associate who sold jewelry on QVC Network, a home shopping network on television. The tie impressed the associate enough that she arranged for Mr. Pileggi to meet with QVC. QVC also was impressed and decided to devote a short segment of its programming to market Appellant's tie on a probationary basis. On October 6, 1991, QVC aired Appellant's segment to an enthusiastic viewer response. The available ties immediately sold out, prompting QVC to take on Appellant's ties as a permanent product on its merchandising schedule. Accordingly, Mr. Pileggi contacted Appellee Kincel and Co., Ltd. Insurance agency, to advise it that he might need to update his coverage from what he then possessed for his landscaping business.

¶ 4 In January of 1992, QVC presented Appellant with a "purchase order" form, whereby QVC agreed to purchase nearly four thousand ties of varying styles at a total value of fifty-five thousand, nine hundred forty-four dollars ($55,944.00). The purchase order was subject to conditions on the reverse side of the form, which listed the vendor's obligations including the requirement that the vendor indemnify QVC from certain claims related to the promotion of the product.

¶ 5 Mr. Pileggi met with Appellee Joseph Marrongelle, a representative of Appellee Kincel with whom Pileggi met in October, to discuss insurance. Mr. Pileggi purchased a "Commercial General Liability Policy" underwritten by Aetna Casualty and Surety Company of Illinois ("Aetna"),

effective January 15, 1992. Mr. Pileggi never read the policy nor did he read the renewal of the policy in January of 1993. At the time of the policy's renewal, Rosemary Pileggi, Appellant's agent, contacted Appellee Marrongelle and requested "vendor's liability" coverage for QVC on Appellant's existing policy.[1]

¶ 6 For the next year, Appellant's ties sold well on QVC. However, in January of 1993, Mr. Pileggi received a letter from an Attorney Iman Abdallah, who claimed that Mr. Pileggi infringed on his necktie patent. Mr. Pileggi settled with Attorney Abdallah rather than be forced to defend against a future claim that could derail the ongoing success that Ty–Button ties had brought him on QVC. So, Appellant purchased for forty-five thousand dollars ($45,000.00) a license from Attorney Abdallah that would allow Ty–Button to continue promoting its tie on QVC despite Attorney Abdallah's patent.

¶ 7 Nevertheless, Attorney Abdallah commenced suit in federal district court against QVC, Mr. Pileggi, and Appellant following a May, 1993 QVC show that introduced Mr. Pileggi as the inventor of the device used in Appellant's tie. By purchasing a license from Attorney Abdallah, the complaint alleged, Mr. Pileggi admitted that Attorney Abdallah had invented and patented the device used in Appellant's tie, and he could not, therefore, represent himself as the inventor.

¶ 8 Mr. Pileggi contacted Appellees to confirm that Appellant's insurance policy would cover against the claim. Mr. Pileggi eventually learned from Aetna that Appellant's policy contained no such coverage. Thus exposed to Attorney Abdallah's suit in contravention of the purchase order's indemnification clause, QVC ceased all purchases and marketing of Ty–Button's ties.

¶ 9 Appellant subsequently filed the present action against Aetna for coverage under the policy and against Appellees for damages resulting from their failure to procure sufficient coverage. Before trial against Aetna began, Mr. Pileggi signed an agreement presented to Appellant by Aetna, whereby Appellant would drop its action against Aetna in exchange for Aetna's promise to defend Appellant and Mr. Pileggi and indemnify QVC from Attorney Abdallah's lawsuit and any suit stemming therefrom. The release excluded Appellant's suit against Appellees from the scope of the liability discharge, and so the within case against Appellees continued.

¶ 10 The case then proceeded to trial. At the conclusion of Appellant's evidence, Appellees moved for the entry of a compulsory nonsuit. The trial court gave two reasons for its order granting Appellee's motion. First, the trial court found that Mr. Pileggi's failure to read the Aetna policy in order to verify that it contained the coverage he allegedly requested amounted to contributory negligence, barring him from recovering on his negligence-based claim.

¶ 11 The second reason for nonsuit was the release agreement between Appellant and Aetna Insurance. The trial court opined that the released inured to Appellee's benefit as they were agents of Aetna, and that the release, in any event, provided Appellant with the coverage it allegedly asked Appellees to procure originally. The trial court thus concluded that the within suit could afford Appellant no further remedy beyond that already provided in the release agreement.

---

1. Appellee Marrongelle's testimony indicated that "vendors' liability" was a term of art for "products' liability," and did not include any other type of liability insurance. N.T. Trial, 8/22/2001, at 117.

¶ 12 Following the grant of nonsuit on behalf of Appellees, Appellant appealed to this Court. We reversed, holding that the grant of nonsuit was in error. We found that the grant of nonsuit was in error because Appellant produced sufficient evidence to allow for reasonable disagreement regarding the question of whether Appellant received a policy different from the type of policy it requested.

¶ 13 Following remand, the jury entered a verdict on behalf of Appellees on August 21, 2001. Appellant filed a timely Post–Trial Motion for Judgment *Non Obstante Verdicto* (JNOV) or New Trial on August 31, 2001. The trial court denied the Post–Trial Motion on January 9, 2002. Appellant filed a timely Notice of Appeal to this Court on January 15, 2002. The trial court did not order Appellant to file a Pa.R.A.P.1925(b) Statement, but it nevertheless authored an Opinion in this case.

¶ 14 Appellant presents the following issues for our review:

(1) Whether the [trial court] erred in failing to rule as a matter of law that the [Appellees] did not provide the insurance coverage requested.

(2) Whether the [trial court] erred in failing to rule as a matter of law that the insurance coverage obtained by [Appellees] did not cover QVC despite [Appellees'] repeated assertions they obtained coverage for QVC for false advertising.

(3) Whether the [trial court] erred in failing to rule that Exhibit P–9, the endorsement to the policy, did not cover QVC for false advertising despite [Appellees'] agreement to provide such coverage and assertions under oath that it did cover QVC for false advertising.

(4) Whether the [trial court] erred in failing to grant a new trial.

Appellant's brief at 4.[2]

■ ¶ 15 At the outset, we note that Appellant's Post–Trial Motion contends that he was entitled to JNOV. Before we reach the merits of this claim, we must determine whether it is properly before this Court. *See Snyder v. Cress,* 791 A.2d 1198, 1200 (Pa.Super.2002) (appellate courts may raise issue of jurisdiction *sua sponte* ).

¶ 16 Pennsylvania Rule of Civil Procedure 227.1(b)(1), relating to Post–Trial Relief, requires:

Post-trial relief may not be granted unless the grounds therefor,

(1) If then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial[.]

¶ 17 In his Motion for Post–Trial Relief, Appellant contends that it "...has preserved [the issue of JNOV] by its requested charge of a directed verdict." Appellant's Motion for Post–Trial Relief at ¶ 32. The record belies this contention. After a thorough analysis of the record, we are unable to find any motion, objection, point of charge or other pleading, save the Motion for Post–Trial Relief, which raises the issue of JNOV for the first time. Accordingly, the issue is technically waived. *See* Pa.R.Civ.P. 227.1(b)(1); *see also Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 260, 322 A.2d 114, 117 (1974) (holding that in order to preserve an issue for review, trial counsel is required to make a timely, specific objection during trial). Nevertheless, we will address the issue on its merits because the trial court took the

**2.** We have renumbered Appellant's issues for purposes of organization.

opportunity to address any error it may have made by its review of Appellant's Post–Trial Motions. *See Soderberg v. Weisel,* 455 Pa.Super. 158, 687 A.2d 839, 845 (1997) (holding that Superior Court will not preclude presentation of issue for failure to comply strictly with Pa.R.Civ.P. 227.1(b) when trial court had an opportunity to correct error by addressing Post–Trial Motions and chose to address them).

¶ 18 We enunciated our standard of review from the denial of a Motion for JNOV in *Goldberg v. Isdaner,* 780 A.2d 654 (Pa.Super.2001), as follows:

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must "consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner." *Walker v. Grand Central Sanitation, Inc.,* 430 Pa.Super. 236, 634 A.2d 237, 240 (Pa.Super.1993). "Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical." *Brown v. Philadelphia College of Osteopathic Medicine,* 2000 PA Super 262, 760 A.2d 863, 868 (Pa.Super.2000). We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. *Mitchell v. Moore,* 1999 PA Super 77, 729 A.2d 1200, 1203 (Pa.Super.1999). Further, "the standard of review for an appellate court is the same as that for a trial court."

*Ferry v. Fisher,* 709 A.2d 399, 402 (Pa.Super.1998).

There are two bases upon which a judgment N.O.V. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Campo v. St. Luke's Hospital,* 2000 PA Super 155, 755 A.2d 20, 23 (Pa.Super.2000) (citations omitted).

*Goldberg,* 780 A.2d at 659–660.[3]

¶ 19 Viewing the record under the above referenced standard, we are satisfied that the trial court committed no error when it denied Appellant's Post–Trial Motion for JNOV. Appellant contends that the evidence was insufficient to sustain the verdict because Appellees never obtained the type of insurance that Appellant requested, and, therefore, Appellant was entitled to JNOV.

¶ 20 Appellant argues that in its initial meeting with Appellee Marrongelle, it requested a full panoply of insurance for itself and QVC. The evidence produced at trial indicates that Appellant's agents requested Appellee Marrongelle to obtain

---

**3.** At this point, we note with displeasure several deficiencies within Appellant's brief. Contrary to Pa.R.A.P. 2111, Appellant has failed to include a statement of this Court's scope and standard of review with respect to its claims. Secondly, Appellant offers only sparse citation to relevant case law with respect to its claims. However, because Appellant has provided this Court with the barest minimum of legal argument sufficient for our review, we will address its claims and furnish the most applicable scope and standard of review in our analysis of them.

commercial general liability insurance for their company in early 1992. N.T. Trial, 8/22/2001, at 88. Appellee Marrongelle's testimony indicated that commercial general liability coverage included premises liability coverage, product liability coverage, advertising injury coverage and personal injury coverage. *Id.* at 88. Appellant's original policy did not include QVC. As a result of entering into its sales contract with QVC, Appellant was also required to indemnify QVC. QVC's purchase order with Appellant required various different types of coverage, including coverage for advertising injury. Appellant wished to change its policy so as to indemnify QVC in accordance with the purchase order. Therefore, in January, 1993, Rosemary Pileggi, Appellant's agent, contacted Appellee Marrongelle and requested "vendor's liability" insurance for QVC to be added to their existing insurance contract. Appellee testified that Ms. Pileggi did not request any other type of insurance. Appellee Marrongelle then added "vendor's liability" coverage to Appellant's insurance contract effective January 15, 1993.

¶ 21 Appellant contends that a letter dated February 3, 1992, from Vincent Pileggi, Appellant's CEO, demonstrates that Appellant and Appellee Marrongelle discussed the requirements of QVC's purchase order before Ms. Pileggi contacted Appellee Marrongelle in 1993. Therefore, Appellant contends that Appellee Marrongelle obtained the wrong insurance for Appellant in 1993. The letter states the following:

> I know my sister and I went over our insurance needs back in Jan. with you at my brother's office regarding insuring QVC based on the requirements on [the] back of [the purchase order] as well as our insurance needs. If you think we should need more coverage since I will be appearing on T.V., please go ahead

and take care of it since you are the expert.

Appellant's letter dated February 3, 1992.

¶ 22 Appellee Marrongelle contradicted this letter on cross-examination, when he testified that he asked Vincent Pileggi if his company (Appellant) had a written contract with QVC and that Pileggi responded that they did not have a written contract. N.T. Trial, 8/22/2001, at 113. Further, Appellee Marrongelle's testimony indicates that he received Appellant's purchase order with QVC in December, 1994, after Attorney Abdallah had commenced suit against Appellants. N.T. Trial, 8/22/2001, at 71. In this case, when presented with conflicting evidence, the jury accepted Appellee Marrongelle's version of events and found in favor of Appellees. We have consistently held that JNOV should only be granted in a clear case. *See Van Zandt v. Holy Redeemer Hospital,* 2002 PA Super 254, at ¶ 21, 806 A.2d 879. Here, the evidence regarding when Appellant requested indemnity insurance for QVC and what type of indemnity coverage Appellant requested for QVC and itself conflicted with Appellees' evidence. Therefore, it is not at all clear that judgment would have been proper for Appellant. We, as an appellate court, will not substitute our judgment for the finder of fact. *Id.,* 2002 PA Super 254, at ¶ 21, 806 A.2d 879. Therefore, viewing the evidence in a light most favorable to Appellees as the non-moving party, we find that the evidence was sufficient for the jury to conclude logically that Appellant did not request any indemnity insurance for QVC other than "vendor's liability" insurance. *See Goldberg,* 780 A.2d at 659–660. Accordingly, we affirm the holding of the trial court.

¶ 23 We consider Appellant's remaining claims together because they present essentially one question for our review:

Whether the verdict was against the weight of the evidence because Appellee Marrongelle, contradicted himself at trial when he claimed that QVC possessed coverage for false advertising under the policy. Accordingly, if this claim were meritorious, Appellant's remedy would be for this Court to grant it a new trial. Therefore, by addressing Appellant's second and third claims together, we will resolve its fourth claim.

¶ 24 Our standard of review with respect to a the denial of a Motion for a New Trial based on a "weight of the evidence" argument is as follows:

> Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way.

*Cangemi v. Cone,* 774 A.2d 1262, 1265 (Pa.Super.2001) (citations omitted).

¶ 25 Appellant contends first that "[the] trial court erred in finding the jury could accept the testimony of Mr. Marrongelle that he supplied the insurance coverage requested by [Appellant]. . . ." This argument is entirely without merit. Appellant's argument consists of attacking the credibility of Appellee Marrongelle's testimony with respect to the type of liability coverage that Appellant requested him to obtain. A review of Appellee Marrongelle's testimony on direct examination indicates that Appellant's agent, Rosemary Pileggi, requested "vendor's liability" insurance for Appellant and QVC *via* the

telephone. N.T. Trial, 8/22/2001, at 148. Ms. Pileggi's testimony indicates that she asked Appellee Marrongelle to obtain whatever proper coverage that Appellant and QVC needed, without specification of the type of coverage. *Id.* at 72. Ms. Pileggi also testified that at the time of her initial meeting with Appellee Marrongelle, she provided to him the purchase order from QVC. *Id.* at 71. Appellee Marrongelle testified that he did not receive the purchase order outlining QVC's requirements until December of 1994, as evidenced by a facsimile sent to Appellee Marrongelle by Ms. Pileggi. *Id.* at 149.

¶ 26 Appellant argues that during direct examination, Appellee Marrongelle contradicted himself by claiming that he "did provide the general liability and advertising insurance requested by [Appellant]" for itself and QVC, as opposed to the limited "vendor's liability" coverage that he testified Appellant requested. Appellant's brief at 17.

¶ 27 During direct examination, Defense counsel questioned Appellee Marrongelle as follows:

> MR. MORGAN: Did you provide an insurance policy for [Appellant] that was different than what was—than what they requested?
>
> WITNESS: No, I did not.
>
> MR. MORGAN: Didn't they request this endorsement?
>
> WITNESS: Yes, they did.
>
> MR. MORGAN: Didn't they request the general liability coverage which was provided in both policies, the initial policy and the renewal policy?
>
> WITNESS: Yes.
>
> MR. MORGAN: Again, at the risk of repeating yourself here, what coverage was it in the general liability policy for the 1993 year?

WITNESS: The additional insured vendor's liability.

MR. MORGAN: Plus what was in the body of the policy?

WITNESS: The commercial general liability part.

MR. MORGAN: Yes. And there were various coverages?

WITNESS: Yes.

MR. MORGAN: Such as?

WITNESS: Such as premises operations, personal injury, advertising injury, supplemental payments.

MR. MORGAN: Isn't that what you were told to get?

WITNESS: Yes.

N.T. Trial, 8/22/2001, at 168–169.

¶ 28 It is evident from this colloquy that Appellee Marrongelle was referring to the coverage provided to Appellant in the initial general liability policy as opposed to the renewal policy which added the "vendor's liability" clause. Appellant's policy indicates that it would indeed cover losses resulting from bodily injury, property damage, advertising injury and payment of reasonable medical expenses. *See* Appellant's Insurance Policy, Commercial General Liability Coverage Form. Therefore, it is clear that Appellee Marrongelle did not contradict his testimony that he gave Appellant only "vendor's liability" insurance for QVC because that is all that Appellant requested with respect to QVC's third-party coverage. Accordingly, the jury was presented with essentially one question, *i.e.*, whether to believe Rosemary Pileggi's testimony that she requested "whatever insurance necessary," or whether to believe Mr. Marrongelle's testimony that Appellant requested only "vendor's liability" coverage for QVC and commercial general liability coverage for itself.

¶ 29 It is well-settled that credibility determinations are for the fact-find-

er, which is entitled to believe all, part or none of the evidence presented. *Randt v. Abex Corp.*, 448 Pa.Super. 224, 671 A.2d 228, 233 (1996). It is also clear that a new trial will not be awarded merely because the evidence is conflicting, and the jury could have decided either way. *Cangemi*, 774 A.2d at 1265 (citations omitted). In the present case, the jury, as is its prerogative, accepted Mr. Marrongelle's version of events. After a thorough review of the evidence and the record in this case, we do not find that this result shocks this Court's collective sense of justice. Therefore, we find no error in the trial court's conclusion that the facts are not as Appellant would now have us believe them to be. Accordingly, we find that Appellant is not entitled to a new trial.

¶ 30 As we have dismissed each of Appellant's claims, we affirm the judgment of the trial court.

¶ 31 Judgment affirmed.