**Dubranski v. Relan**

C.P. of Lackawanna County, no. 2006 CV 1241.

*Danielle M. Mulcahey,* for plaintiffs.
*Noah E. Katz,* for defendant Relan.
*Matthew P. Keris,* for defendant Mercy Hospital.

MINORA, *J.,* August 24, 2010—

## I. INTRODUCTION

Currently before the court are the separate motions for summary judgment of defendants, Manish Relan M.D. and Mercy Hospital. In the interests of judicial economy, we will dispose of both motions for summary judgment in this comprehensive memorandum and order.

By way of background, the plaintiff claims that defendants failed to address Roselyn Dubranski's hernia and bowel obstruction during her March 15, 2004 admission at Mercy Hospital. Allegedly, as a result of defendants' failure, the decedent suffered sepsis which led to her death.

This instant action sounding in medical malpractice was initiated by plaintiff, Kevin Dubranski, administrator of the estate of Roselyn Dubranski, who filed a complaint on March 7, 2006. The complaint alleges that the decedent, Roselyn Dubranski, presented to Mercy Hospital on March 15, 2004 with complaints of vomiting. An abdominal x-ray at the emergency room revealed a small bowel obstruction. Roselyn Dubranski was thereafter admitted to Mercy Hospital. Despite confirmation of a hernia and small bowel obstruction, defendants allegedly failed to address these conditions during her admissions to Mercy Hospital from March 14, 2004 through March 18, 2004. On March 18, 2004, Mrs. Dubranski was allegedly discharged without proper treatment for the large ventral hernia and small bowel obstruction.

On April 10, 2004, Mrs. Dubranski presented to and was admitted to Community Medical Center. A CT scan disclosed a large ventral hernia with incarcerated bowel. However, Roselyn Dubranski's condition was so deteriorated that she was not stable enough for surgery. On April 11, 2004, Roselyn Dubranski passed away. An autopsy revealed that her death was caused by necrotic ischemic incarcerated bowel in the hernia.

Plaintiffs experts have opined that as of her admission to Mercy Hospital on March 15, 2004, Roselyn Dubranski was a surgical candidate and would have tolerated surgery to repair the small bowel obstruction. (See expert report of I. Michael Leitman M.D., FACS attached as exhibit "A" to plaintiff's answer to motion for summary judgment of defendant, Mercy Hospital). However, Dr. Relan allegedly failed to obtain the necessary studies to determine the cause of the small bowel obstruction and

failed to obtain a surgical follow-up. Without surgery and proper treatment, the incarcerated bowel became necrotic, caused pain, suffering and ultimately death.

The matter progressed through the pretrial stage until the defendants filed these instant summary judgment motions. The matter has been adequately briefed and argued before the undersigned on May 5, 2010 and is now ripe for disposition. We will detail the issues below which form the basis for defendants' collective contentions for summary judgment.

## II. ISSUES

(A) Is there a triable issue of fact for the jury to decide whether or not Dr. Relan was an "ostensible agent" of Mercy Hospital?

(B) Has the plaintiff presented enough evidence to send to a jury the issue of whether Dr. Relan's alleged deviation from the standard of care was the proximate or factual cause of decedent's harm?

(C) Is the issue of any superseding cause of harm also within the province of a jury negating summary judgment?

(D) The fourth issue has been resolved at oral argument and in plaintiff's brief when it is conceded and stipulated that Kevin Dubranski will not advance a claim under the Wrongful Death Act from the loss of society and comfort he would have received as a husband from his wife. However, the claim for financial contributions the decedent provided for the care and support of the children of Kevin and Roselyn Dubranski will survive and continue to be pursued.

## III. DISCUSSION

### The General Standards for Summary Judgment

The standards for ruling on a motion for summary judgment are well-defined and clear. The court can grant summary judgment only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in the light most favorable to the non-moving party. In doing so, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party and thus may only grant summary judgment where the right to such judgment is clear and free from all doubt. See *Summers v. Certainteed Corporation*, 997 A.2d 1152 (Pa. 2010); *Toy v. Metropolitan Life Insurance Company*, 593 Pa. 20, 928 A.2d 186 (2007).

With those guiding principles in mind, we can now examine the specific contentions for summary judgment in this case.

### A.

*Mercy Hospital's request for summary judgment on the basis that there is no material dispute of facts which fail to establish a claim against them on the theory of "ostensible agency"*

The Medical Care Availability and Reduction of Error Act (MCARE Act), 40 P.S. §1303.101 et seq. codified the law of ostensible agency as follows:

"(a) *Vicarious liability*—A hospital may be held vicariously liable for the acts of another health care provider through principles of ostensible agency only if the evidence shows that:

"(1) a reasonably prudent person in the patient's position would be justified in the belief that the care in question was being rendered by the hospital or its agents; or

"(2) the care in question was advertised or otherwise represented to the patient as care being rendered by the hospital or its agents.

"(b) *Staff privileges*—Evidence that a physician holds staff privileges at a hospital shall be insufficient to establish vicarious liability through principles of ostensible agency unless the claimant meets the requirements of subsection (a)(1) or (2). See 40 P.S. §1303.516(a)(1)(2) and (b)."

This codification came into being because it has been the law in Pennsylvania that a hospital may be held liable for the acts of omissions of an independent doctor under the theory of ostensible agency. *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 647 (1980); *McClellan v. Health Maintenance Organization of Pennsylvania,* 413 Pa. Super. 128, 604 A.2d 1053 (1992).

Also, the factors relevant to finding of ostensible agency may be established through inferences derived from the evidence. *Goldberg v. Isdaner,* 780 A.2d 654, 661 (Pa. Super. 2001).

For the first part, a jury can reasonably find ostensible agency without the plaintiff specifically testifying that she believed that she was being treated by the defendant hospital and not the defendant doctor. See *Goldberg v. Isdaner, supra.*

Moreover, the "representation" requirement is satisfied if the hospital acts or omits to act in some way which leads the patient to a reasonable belief that she is being treated by the hospital or one of its employees. *Fenchen v. St. Luke's Hospital,* 71 D.&C. 4th 401 (2005); *Capan v. Divine Providence Hospital, supra.*

In the case at hand, a jury would certainly be able to derive inferences from the facts in the record to determine under the "reasonably prudent person" standard that Mrs. Dubranski believed she was under the care of the hospital and/or that Dr. Relan was an agent of the hospital.

The facts of record include but are not limited to:

(1) Mrs. Dubranski meeting Dr. Relan after presenting to the Mercy Hospital emergency room for care;

(2) Mrs. Dubranski being treated by Dr. Relan at Mercy Hospital from March 15, 2004 through March 18, 2004; and

(3) Mrs. Dubranski being billed by Mercy Hospital for treatment from March 15, 2004 through March 18, 2004 while she was under the care of Dr. Relan.

(See deposition of Dr. Relan pp. 28-29. 77-78—exhibit "A" to Dr. Relan's brief and exhibit "B" to Dr. Relan's brief—invoices for services of Mercy Hospital.)

Ultimately, the guidelines of "ostensible agency" as set forth at 40 P.S. §1303.516 must be analyzed from the "reasonably prudent person" perspective. Moreover, this analysis is obviously left to the jury. See *Goldberg v. Isdaner, supra.*

Since our summary judgment record must be viewed in the light most favorable to the non-moving party, we must deny Mercy Hospital's motion for summary judg-

ment based on the "ostensible agency" issue and leave said determination of "ostensible agency" to the jury. See *Summers v. Certainteed Corporation, supra.*

## B.

*Has the plaintiff presented enough evidence to send to a jury the issue of whether Dr. Relan's alleged deviation from the standard of care was the proximate or factual cause of decedent's harm?*

Because medical malpractice is a form of negligence, to state a prima facie cause of action, a plaintiff must demonstrate the elements of negligence: a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of the harm. See *Quinby v. Plumsteadvilie Family Practice Inc.,* 589 Pa. 183, 907 A.2d 1061 (2006).

With all but the most self-evident medical malpractice actions, there is the requirement that the plaintiff provide a medical expert who will testify as to the elements of duty, breach and causation. *Quinby v. Plumsteadville Family Practice Inc., supra.*

This requirement stems from a judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances. See *Joyce v. Boulevard Physical Therapy & Rehabilitation Center P.C.,* 694 A.2d 648 (Pa. Super. 1997).

In the case at hand, plaintiff has presented two expert reports which certainly merit sending the case to a jury. (Exhibit "A"—expert report I. Michael Leitman M.D.,

FACS and exhibit "B"—expert report of Brian D. Feingold M.D., FACP.)

As Dr. Feingold opined:

"upon presentation with signs, symptoms, and radiological findings of partial SBO (small bowel obstruction), the standard of care required further evaluation with an abdominal CT scan and a surgical consultation to determine the underlying cause of her condition. Common causes of extrinsic bowel obstruction include hernias and scar tissue (adhesions) from prior abdominal surgery. The reducible ventral hernia, noted by the ER physicians, was the most likely cause of the partial SBO. Dr. Relan negligently failed to order an abdominal CT scan and admitted that he did not consider ordering a CT scan or surgical consultation because of her "clinical findings." Furthermore, Dr. Relan incorrectly surmised that the partial SBO was due to renal failure, when in fact renal failure is actually one possible cause of adynamic ileus, a different condition, which represents physiologic slowing down of bowel obstruction, which is due to a true extrinsic or internal anatomic blockage of the intestines. Dr. Relan negligently surmised that the patient's nausea and vomiting were secondary to gastritis from medication and renal failure, rather than secondary to the partial SBO, the latter of which was a far more likely clinical cause. Although the patient clinically improved during her hospitalization, Dr. Relan failed to order a work-up for the underlying cause of her partial SBO. No repeat abdominal x-ray or CT scan was ordered to follow-up on the findings of partial SBO. Furthermore, the underlying cause of partial SBO was never addressed."

Moreover, plaintiffs other expert, Dr. Leitman, opened that Mrs. Dubranski should have undergone surgery while

under Dr. Relan's care and would have been a reasonable candidate. He stated:

"It is my opinion within a reasonable degree of medical certainty that had Mrs. Dubranski been referred to a general surgeon, having the information of her medical history of intestinal obstruction and the ventral hernia, that surgical repair of the ventral hernia would have been carried out and would have prevented further episodes of intestinal obstruction, incarcerated hernia, intestinal necrosis, sepsis and her death. She would have been a reasonable surgical candidate by March 18, 2004."

Her presentation to Community Medical Center in April 2004 and attempts at surgery therefore were moot because when she presented to the hospital she was no longer a candidate for surgery "due to her instability she could not have surgery and expired on April 11, 2004." (See Dr. Leitman's expert report.)

Ultimately, plaintiffs have produced a prima facie case of medical malpractice against Dr. Relan which must be resolved by a jury. Therefore, we must deny Dr. Relan's motion for summary judgment in this regard.

## C.

*Is the issue of any superseding cause of harm also within the province of a jury negating summary judgment?*

Defendants argue that somehow Dr. James Juinta or the Community Medical Center were responsible for superseding causes negating their liability. However, they did not join either party as an additional defendant. See Pa.R.C.P. 2252 et seq.

Even if they did, the issue of intervening and/or superseding cause is left to the jury where as is the case here, the plaintiff has established a prima facie case of medical malpractice against the named defendants. See *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990); *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980).

Therefore, the defendants attempt to invade the province of the jury on the issues of intervening and/or superseding cause must be denied.

## D.

As we indicated above, plaintiff Kevin Dubranski's claim for loss of society and comfort of his wife Roselyn Dubranski has been withdrawn. Plaintiff Kevin Dubranski will be allowed to continue his claim for lost contributions his wife, Roselyn Dubranski provided to care for and support their children.

A comprehensive order consistent with this memorandum follows.

## ORDER

And now to wit, August 24, 2010, upon due consideration of collective defendants' motions for summary judgment and in accordance with able arguments of counsel, their stipulations and this memorandum.

It is hereby ordered and decreed that:

(1) Plaintiff Kevin Dubranski's claim for loss of society and comfort of his wife Roselyn Dubranski is withdrawn. Plaintiff Kevin Dubranski will be allowed to continue his claim for lost contributions his wife, Rose-

34

lyn Dubranski provided to care for and support their children.

(2) All other aspects of collective defendants' motions for summary judgment are denied.