J-S24038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN P. SENATORE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN HAZAKIS, PAUL HAZAKIS AND | : | |
| GEORGE MIHOS, | | |
| | : | |
| Appellants | : | No. 3247 EDA 2014 |

Appeal from the Judgment entered on January 2, 2015
in the Court of Common Pleas of Delaware County,
Civil Division, No. 2009-8319

BEFORE: GANTMAN, P.J., ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 29, 2015**

John Hazakis ("John"), Paul Hazakis ("Paul") and George Mihos ("Mihos") (collectively, "Defendants") appeal from the Judgment entered against them and in favor of John P. Senatore ("Senatore"). We affirm.

In June 2009, Senatore filed a breach of contract action against Defendants, seeking payment for services rendered in the construction and renovation of a diner. According to Senatore's Complaint, Defendants were partners in a business called Hot Spot II, "a restaurant to be constructed by private contractors retained by Defendants" in Springfield, Pennsylvania. Complaint at ¶ 3. Senatore asserted that on or about February 26, 2006, Defendants retained Senatore's services as a project manager "of the construction to be done at Hot Spot II." *Id.* at ¶ 4. According to Senatore, the parties agreed that he was to be paid $5,000 per month until the end of

construction, which was estimated to last four months. *Id.* at ¶ 5. Senatore accepted the offer. *Id.* at ¶ 6. Construction began around 2006, but, according to the Complaint, lasted longer than anticipated. *Id.* at ¶¶ 7-8. Finally, in February 2007, Defendants stopped construction. *Id.* at ¶ 10. Senatore filed the instant breach of contract action claiming that Defendants failed to pay him $65,000, in accordance with their agreement. *Id.* at ¶¶ 11-13.

Defendants filed an Answer, New Matter and Cross-Claim. Defendants averred that initially, only John was involved in the project. Second Amended Answer, New Matter and Counterclaim at ¶ 4. According to Defendants, they were principals in a *corporation* known as Hot Spot Diner II. *Id.* at ¶ 3. Defendants averred they filed the Articles of Incorporation on February 23, 2006, and never acted in their individual capacities. *Id.* Defendants further averred that Senatore agreed to construct and renovate the diner for $80,000, and that Senatore agreed to a fee at the discretion of John. *Id.* at ¶ 5. Defendants claimed that Senatore represented to John that the project would take only three months. *Id.* Defendants filed counter-claims against Senatore for breach of contract, fraud/misrepresentation, and for counsel fees pursuant to 42 Pa.C.S.A. § 2503(9).

On December 8, 2011, the trial court entered judgment on the pleadings in favor of Senatore. On appeal, this Court reversed. ***Senatore***

*v. Hazakis*, 60 A.3d 861 (Pa. Super. 2012) (unpublished memorandum). This Court concluded that there existed disputed issues of fact as to whether Defendants acted in an individual or representative capacity when contracting with Senatore. *Id.* (unpublished memorandum at 1).

On remand, the case proceeded to a jury trial. Ultimately, the jury rendered its verdict, finding that (1) there was an agreement between Senatore and Defendants; (2) the oral agreement was not between Senatore and Defendants as principals in their corporate capacity; (3) the oral agreement was between Senatore and Defendants acting in their individual capacities; and (4) each of the Defendants breached their agreement with Senatore. N.T., 4/30/14, at 96-97. The jury found each of the Defendants 100% liable for $39,600 in damages to Senatore. *Id.* at 98. Finally, the jury found in favor of Senatore and against Defendants on Defendants' counterclaims. *Id.* at 99-101. Defendants filed Post-Trial Motions, which the trial court denied. Thereafter, Defendants filed a Notice of Appeal, and on January 2, 2015, at the direction of this Court, final judgment was entered on the jury's verdict.

Defendants now present the following claims for our review:

1. Is it error for a judge to confirm a verdict that found individuals jointly and severally liable for a performance contract when there is no evidence of any contractual relationship between the parties?

2. Is it error for [] a judge to confirm a verdict that assumed a partnership when there is real evidence a partnership existed

or that there [*sic*] any conformity with the Uniform Partnership Act of 1915, as amended?

3. Can a piercing of the corporate veil be successful where a corporation is formed prior to the beginning of the contractual work just because a negotiation with a contractor by a principal was successfully done prior to the forming of the corporation?

Brief for Appellants at 5.

Defendants first claim that there is no evidence to support the verdict against Paul and Mihos, as they were not present at the time the contract was formed. *Id.* at 18. Defendants point out evidence that Senatore initially met with John and a former defendant, Vasilios Kyramararios ("Kyramararios"). *Id.* Defendants argue that "[n]owhere in this record is there any testimony that [Senatore] had any meeting with Paul [] and [] Mihos." *Id.* Defendants assert there is no evidence supporting a finding of individual liability against Paul and Mihos. *Id.* Thus, Defendant seek judgment notwithstanding the verdict.

In reviewing a trial court's decision granting or denying judgment notwithstanding the verdict,

we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. … We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a judgment N.O.V. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable

- 4 -

minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Ty-Button Tie, Inc. v. Kincel and Co., Ltd.*, 814 A.2d 685, 690 (Pa. Super. 2002) (citation omitted). "Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded evidence at trial, we will not substitute our judgment for that of the finder of fact." *Van Zandt v. Holy Redeemer Hosp.*, 806 A.2d 879, 886 (Pa. Super. 2002) (citation omitted).

To prove a breach of contract, a plaintiff must prove that a contract existed, it was breached, and damages resulting from the breach. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009). In order for an enforceable agreement to exist,

there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent. We must, therefore, look to the parties' course of conduct to ascertain the presence of a contract.

*Prieto Corp. v. Gambone Constr. Co.*, 100 A.3d 602, 609 (Pa. Super. 2014) (citation omitted).

- 5 -

The evidence, viewed in a light most favorable to Senatore, reflects that Senatore first met John and Kyramararios at a diner owned by John. N.T., 4/28/14, at 47, 48. At the diner, Kyramararios approached Senatore about the construction of the Hot Spot II. *Id.* at 49. Senatore met with John and Kyramararios about the Hot Spot II construction project in December 2005. *Id.* at 51. At that meeting John and Kyramararios explained that they wanted to open the Hot Spot II within four months. *Id.* at 52. Senatore offered to provide equipment and "[a]ll my expertise on how to save them money to be able to get the job done" for "$5,000 per month for four months." *Id.* at 53. Senatore also stated that he would wait until the diner opened to get paid. *Id.* According to Senatore, he knew three partners were involved with the project: Kyramararios, Paul and John. *Id.* at 51. Senatore never was told that a corporation was involved, or that he would be an employee of a corporation. *Id.* at 54, 101.

Senatore testified that John accepted his offer to perform the work, for four months, for a total of $20,000. *Id.* at 55. When the work extended beyond four months, John asked Senatore to continue with the project. *Id.* at 73. Senatore began work in February 2006, and completed the work in February 2007. *Id.* at 91. Finally, upon completion, Senatore was never paid for his work. *Id.*

Kyramararios testified that when planning began for the Hot Spot II, he, John and Paul were partners. *Id.* at 153. Kyramararios confirmed that

the partners decided to engage Senatore for the project. *Id.* at 154-55. Kyramararios stated that Mihos joined the partnership because of cost overruns. *Id.* Kyramararios testified that Senatore offered to perform the work request for four months, for a total of $20,000. *Id.* at 157. Kyramararios explained that Senatore provided tools and equipment that saved the partnership rental fees. *Id.* at 166. Kyramararios confirmed that the partners accepted Senatore's offer. *Id.* at 157-58.

Paul testified that he was involved with the business prior to the formation of a corporation. N.T., 4/29/14, at 114. Mihos testified that John approached him for money after construction on the Hot Spot II began. *Id.* at 116. Mihos expressly confirmed that he was a partner in the business. *Id.* at 120.

The evidence, viewed in a light most favorable to Senatore, established the existence of an agreement with all three Defendants, breach of the agreement, and damages. We discern no abuse of discretion or error by the trial court by its denial of judgment notwithstanding the verdict. Accordingly, we cannot grant Defendants relief on this claim.

Defendants next claim that a partnership cannot be presumed without evidence of its formation. Brief for Appellants at 19. Defendants assert that they could only be found liable if there existed a legal partnership, formed pursuant to Pennsylvania's Uniform Partnership Act, 15 Pa.C.S.A. §§ 8301 *et*

*seq.* Brief for Appellant at 19-20. According to Defendants, Senatore failed to establish the legal requirements of a partnership. *Id.* at 21, 22.

Initially, we observe that Kyramararios and Mihos expressly testified regarding the existence of a partnership, as summarized above. Further, Defendants did not challenge the sufficiency of the evidence establishing a legal partnership in their Post-Trial Motions. Accordingly, that claim is waived.[1] *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

Finally, Defendants claim that the trial court improperly permitted Senatore to "pierce the corporate veil." Brief for Appellants at 25. Defendants argue that Senatore deliberately decided not to name the corporation in his pleadings. *Id.* According to Defendants, they formed a corporation "immediately prior to the effective lease for the facility—the property for which [Senatore] was hired to supervise construction." *Id.* Nevertheless, Defendants assert that Senatore pierced the corporate veil, without naming the corporation as a party. *Id.*

In their Post-Trial Motions, Defendants raised no claim related to the legal existence of a corporation, or improper piercing of the corporate veil. Accordingly, this claim is waived. *See* Pa.R.A.P. 302(a).

Judgment affirmed.

---

[1] In their Post-Trial Motions, Defendants challenged the sufficiency of the evidence establishing the existence of an oral contract. Post-Trial Motions, ¶¶ 1-2.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2015