**Sandra HUTTNER, in her capacity as Trustee for the Heirs and Next of Kin of Delores Fenske, Decedent, and Joanne Kinne, Respondents (C9–01–416), Appellants (C6–01–437),**

v.

**STATE of Minnesota, Ramsey County, Audrey Fischer, Kenneth Johnson, Leon Boeckmann, Behavioral Health Services, Inc., David L. Johnson, MD, and Larry Dewayne Davis, Jr., Appellants (C9–01–416), Respondents (C6–01–437).**

Nos. C9–01–416, C6–01–437.

Court of Appeals of Minnesota.

Sept. 4, 2001.

Review Denied Nov. 13, 2001.

See also 595 N.W.2d 520.

Arlo H. Vande Vegte, P.A., Long Lake, MN, for appellant Huttner.

Susan Gaertner, C. David Dietz, St. Paul, MN, for respondents Ramsey County and Fischer.

Considered and decided by SCHUMACHER, Presiding Judge, STONEBURNER, Judge and PARKER, Judge *.

* Retired judge of the Minnesota Court of Ap-    peals, serving by appointment pursuant to

## OPINION

STONEBURNER, Judge.

During his provisional discharge from a commitment for mental illness, and while under the intensive supervision of Ramsey County social worker Audrey Fischer, Larry Dewayne Davis stopped taking the medication prescribed to control his mental illness. Davis became violent, attempted to murder Joanne Kinne, and murdered Delores Fenske. Sandra Huttner, as trustee for Fenske's heirs and next of kin, challenges the district court's determination that her wrongful-death claims against Ramsey County and Fischer are barred by the three-year limitation on bringing wrongful-death actions. Ramsey County and Fischer challenge the district court's determination that they are not entitled to official immunity because Fischer's duty to verify Davis's prescribed medications was a ministerial duty. Because the unambiguous language of Minn.Stat. § 573.02, subd. 1 (1996), which excepts wrongful-death actions based on murder from the three-year limitation, does not limit its application to the murderer, we reverse the district court's application of the limitation to Huttner's wrongful-death claims against Fischer and the county. Because Fischer's statutory duty to monitor Davis's compliance with his medication and treatment plan implicitly includes the ministerial duty to verify that Davis was taking the medications prescribed for him, we affirm the district court's determination that Fischer and the county are not entitled to official immunity for Fischer's failure to monitor Davis's compliance with his individual treatment plan.

## FACTS

Davis has a history of alcohol and marijuana use. He started hearing "voices"

Minn. Const. art. VI, § 10.

and in November 1996, he became spontaneously violent, assaulting an employee of an apartment complex and, after being transported to a hospital, the hospital staff. As a result, Davis was committed as mentally ill and chemically dependent. Fischer was appointed as Davis's case manager while Davis was hospitalized. Pursuant to court order, Haldol was administered to Davis for his psychosis and Cogentin was administered to control the side effects of Haldol. Davis was compliant with medications during his hospitalization and he made progress in treatment, although at least one urine test showed cannabis in his system in early January 1997. On January 30, 1997, Davis was provisionally discharged from the treatment center under intensive supervision. His provisional discharge plan required him, among other things, to take his prescribed medications, meet with his psychiatrist, meet with Fischer, and avoid chemicals.

On April 11, Davis met with his psychiatrist and told the psychiatrist that he wanted to stop taking Haldol and that he had already (without consulting a doctor) reduced the dosage from the prescribed 10 mg to 5 mg. The psychiatrist told Davis he could discontinue taking Cogentin but he did not tell Davis to stop taking Haldol, or approve the reduced dosage of Haldol. Nonetheless, Davis stopped taking all medications on April 11, 1997. Davis also stopped seeing the psychiatrist.

At an April 14 meeting with Fischer, Davis told her that the psychiatrist had authorized him to stop taking his medications. Fischer made a note to confirm Davis' statement with the psychiatrist. Because of "crisis events" in other files, however, Fischer never did so. Fischer continued to meet with Davis through May

During that period, she noted no unusual conduct by Davis. At the May 16 meeting, Fisher and Davis agreed to meet on May 23. When Fisher arrived at Davis' apartment on May 23, however, there was no answer when she knocked on his door, nor was there an answer when she tried to contact Davis by phone.

On May 25, Davis became violent. He killed Fenske and tried to kill Joanne Kinne. Later tests showed evidence of marijuana in his blood at the time of the crimes. In the resulting criminal proceedings, Davis was convicted of murder and attempted murder. The supreme court affirmed the convictions and, regarding Davis's April 11, 1997 meeting with his psychiatrist, stated that "[m]isunderstanding the doctor's instructions, [Davis had] discontinued all medications." *Davis v. State*, 595 N.W.2d 520, 524 (Minn.1999).

In related civil proceedings, Sandra Huttner was appointed trustee for Fenske's heirs and next-of-kin. She and Kinne sued the county, Fischer, and other persons and entities involved in Davis's treatment on several theories, including Huttner's claim for wrongful death. The details of Huttner's April 26, 2000, attempt to serve Fischer in the wrongful-death action are disputed. Fischer was served again on July 10, 2000. It is undisputed that Huttner served the county after the generally applicable three-year limit for wrongful-death claims had expired.

On July 18, the county moved, on behalf of itself, Fisher, and others, to dismiss the wrongful-death claims and for summary judgment based on theories including official immunity for Fischer and vicarious official immunity for itself, and the statute of limitations for wrongful-death actions. The district court dismissed the wrongful-death claim against the county based on the three-year statute of limitations, but ruled that Fischer's conduct was not entitled to official immunity because when she wrote the note to verify Davis's medication status with the psychiatrist, her duty to do so became ministerial. Because the district court determined that Fischer was not entitled to official immunity, and because the county could be vicariously liable for Fischer's conduct, the district court denied the motion to dismiss Kinne's action against the county and Fischer. In a later order, the district court dismissed the wrongful-death action against Fischer, determining that it was barred by the statute of limitations. The district court declined to reconsider the immunity questions. The county appealed the district court's immunity rulings (No. C9–01–416) and Huttner appealed the statute of limitations determination (No. C6–01–437). This court consolidated the appeals.

## ISSUES

1. Is the "murder exception" to the three-year statute of limitations on wrongful-death claims applicable to persons other than the murderer?

2. Is a social worker who is providing intensive supervision of a person provisionally discharged from a mental-illness commitment entitled to official immunity for a failure to verify the client's compliance with the portion of his individual treatment plan requiring him to take prescribed medications when the person asserts that his psychiatrist had discontinued the medications?

3. Is Ramsey County, the social worker's employer, entitled to vicarious official immunity for the social worker's failure to verify the client's compliance with his treatment plan?

## ANALYSIS

On appeal from a summary judgment, appellate courts ask whether (1)

there are any genuine issues of material fact and (2) the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A reviewing court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

## I. Statute of Limitations

■ Whether a district court correctly determines a limitations period is a legal question we review de novo. *See Sargent v. State Farm Mut. Auto. Ins. Co.*, 486 N.W.2d 14, 16 (Minn.App.1992), *review denied* (Minn. Aug. 4, 1993). Generally actions for wrongful death must be brought within three years after the decedent's death. Minn.Stat. § 573.02, subd. 1 (1996). Under an exception to this rule, however,

[a]n action to recover damages for a death caused by an intentional act constituting murder may be commenced at any time after the death of decedent.

*Id.* Huttner did not serve Ramsey County or Fischer within three years after Fenske's death. The district court held that the legislature intended the murder exception to apply only to claims against the murderer and not to claims against others possibly liable for the murderer's actions on negligence theories.

■ Although the district court may be correct about the legislature's intentions, the statute's language contains no such limitation. And neither legislative intent nor legislative history is relevant when, as here, the language of a statute is unambiguous. *See* Minn.Stat. § 645.16 (1996) (stating when words of a law are "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). The supreme court has stated:

Our statutes provide for an action for the wrongful death of a person, vesting it in the personal representative for the benefit of the next of kin. One cause of action is created, and one only, and all persons whose wrongful act contributed to cause the death may be joined as defendants therein.

*Almquist v. Wilcox*, 115 Minn. 37, 39, 131 N.W. 796, 796 (1911) (referring to a prior version of the current wrongful-death statute). Clearly, an action to recover damages for a death caused by murder may be brought against persons other than the one(s) who actually inflict death. The plain language of the murder-exception to the three-year limitation does not limit its application to the person(s) who commit the murder. To read the exception as only applicable to the murderer(s) would be to improperly read a provision into the statute that the legislature did not include. *See Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks."); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) (stating that "the task of extending existing law falls to the supreme court or the legislature, but does not fall to this court"), *review denied* (Minn. Dec. 18, 1987).

Persuasive as the district court's reasoning may be, we are constrained to interpret the law as written. Huttner's wrongful-death action against Fischer and the county is an action to recover damages for a death caused by an intentional act constituting murder, and as such, may be commenced at any time after the death of the decedent. The claims are not barred by failure to serve Fischer and the county within three years after Fenske's death. Summary judgment for Fischer and the county based on the statute of limitations

is reversed and this aspect of the case is remanded for further proceedings.

## II. Official Immunity

■■■ Where summary judgment sought on grounds of non-federal official immunity is denied, the order denying the summary judgment is immediately appealable. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn.1991). Whether government entities and employees are protected by official immunity is a legal question which appellate courts review de novo. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996).

The common law doctrine of official immunity provides that a public official who is charged by law with duties calling for the exercise of judgment or discretion is not personally liable to an individual for damages unless the official is guilty of a willful or malicious act. Official immunity thus protects government officials from suit for discretionary acts taken in the course of their official duties. The doctrine is designed to protect officials from "the fear of personal liability that might deter independent action."

*Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn.1998) (quoting *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn.1988)) (citations omitted). Only discretionary decisions are immune from suit, so the critical determination is whether the nature of the official's actions is discretionary or ministerial. A discretionary act involves individual professional judgment, reflecting the professional goal and factors of a situation. *Id.* "[A] ministerial duty is one in which nothing is left to discretion; it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Id.* (quotation omitted).

■■■ "The starting point for analysis of an immunity question is the identification of 'the precise governmental conduct at issue.'" *Gleason v. Metropolitan Council Transit Operations*, 563 N.W.2d 309, 315 (Minn.App.1997) (quoting *Watson by Hanson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 415 (Minn. 1996)), *aff'd in part*, 582 N.W.2d 216 (Minn.1998). Here, the precise conduct at issue is Fischer's failure to verify whether, in fact, Davis was no longer obligated under his individual treatment plan to take medications to control his mental illness that Fischer knew were prescribed at the time of his discharge. Despite noting in her records that she should verify Davis's statements that the psychiatrist had discontinued medication, Fischer failed to do so.[1]

1. The district court's order states that Fischer's decision not to suggest revocation of Davis's provisional discharge from the treatment center because of missed appointments, at least one incident of alcohol use, and the fact that Davis was not taking his prescribed medications "constitute decisions regarding how much liberty Fischer was going to afford Davis and are thus protected by the official immunity doctrine." Because Fischer and the county prevailed in these aspects of the official-immunity ruling, the only portion of that ruling that aggrieved Fischer and the county (and hence the only portion of the ruling that was appealed) was the portion ruling that Fischer's failure to verify Davis's medication status was a ministerial duty and unprotected by official immunity. Because Huttner did not file a notice of review in the county's appeal, we decline to address her challenges to other aspects of the official-immunity ruling. *See* Minn. R. Civ.App. P. 106 (requiring notice of review for respondent to obtain review of adverse ruling); *see e.g., Arndt v. American Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn.1986) (stating this court correctly refused to address respondents' claims where notice of review not filed); *cf. Engvall v. Soo Line R.R. Co.*, 605 N.W.2d 738, 744–45 (Minn.2000) (stating failure to immediately appeal appealable interlocutory ruling does not result in forfeiture of

The existence of a ministerial act cannot be determined without a review of the duty underlying the challenged conduct. *S.W. v. Spring Lake Park Sch. Dist. No. 16,* 580 N.W.2d 19, 23 (Minn.1998).[2] "[P]ublic officials clearly have a duty to adhere to ordinances and statutes." *Wiederholt,* 581 N.W.2d at 316 (citation omitted). Minn.Stat. § 245.4711, subd. 3 (1996), required case managers to develop a specific individual community support plan, which must incorporate the client's individual treatment plan, and to "review the [client's] progress, and monitor the provision of services." An individual treatment plan is defined:

[A] written plan of intervention, treatment, and services for an adult with mental illness that is developed by a service provider under the clinical supervision of a mental health professional on the basis of a diagnostic assessment. The plan identifies goals and objectives of treatment, treatment strategy, a schedule for accomplishing treatment goals and objectives, and the individual responsible for providing treatment to the adult with mental illness.

Minn.Stat. § 245.462, subd. 14 (1996). Fischer was assigned as Davis's case manager while he was confined at the regional treatment center. She was aware of his assaultive behavior, that medication was prescribed for Davis, and that a condition of his provisional discharge and his individual treatment plan was that Davis would take medications as prescribed. Necessarily implied in Fischer's statutory duty to monitor Davis's compliance with his treatment plan was a duty to verify that Davis was abiding by the component of that plan requiring him to take prescribed medications. Fischer's note in her records to contact the psychiatrist to verify Davis's statement that medications were no longer prescribed did not *create* a duty, it merely acknowledged her *already existing* statutory duty to be (or become) aware of the medications prescribed and Davis's compliance.

Fischer argues that even if she had a ministerial duty to contact the psychiatrist to verify prescriptions, the timing of such contact was discretionary. We disagree. Fischer acknowledged in her testimony in Davis's criminal trial that a client's failure to take medications is "significant" and would be reported to the court. Evidence in the record verifies the critical role of medication in managing Davis's mental illness. Knowledge that Davis had discontinued medications gave rise to Fischer's immediate duty to verify the status of his prescription. Fulfilling this statutory duty did not require the exercise of any discretion and therefore was ministerial and not entitled to the protection of official immunity. The district court's refusal to order summary judgment on the immunity issues is affirmed[3].

right to review on appeal from final judgment).

2. While the district court did not explicitly address the existence of a duty, it did find that once Fischer decided to contact the psychiatrist, her obligation to actually contact the psychiatrist was merely the execution of a specific duty and therefore ministerial, and not protected by official immunity.

3. Fischer and the county argue they are entitled to summary judgment because Fischer had no ability to control Davis, arguing that, absent an ability to control, Fischer had no duty to the victims in this case. Generally, the existence of a duty to control the conduct of a third person to prevent that person from causing injury to another depends on two factors: (1) whether a 'special relationship' existed between the defendant and the third person and (2) the foreseeability of the harm. *Lundgren v. Fultz,* 354 N.W.2d 25, 27 (Minn. 1984). "Ability to control" is a question for the jury. *Id.* at 28. Close questions of fore-

## III. Vicarious Official Immunity

Huttner argues that even if Fischer is entitled to official immunity, the county could be denied vicarious official immunity for failure to fulfill its separate statutory duty to develop policies to ensure the ongoing contact and coordination between the case manager and community-support services and mental-health services. See Minn.Stat. § 245.4711, subd. 5 (1996). We have concluded that Fischer is not entitled to official immunity. Additionally, because this issue was not addressed by the district court, it is not properly before this court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Under these circumstances, we decline to address the question. Based on our holding that Fischer is not entitled to official immunity for failing to verify Davis's compliance with prescribed medications, there is no vicarious official immunity for the county for this aspect of Fischer's conduct. *See Wiederholt*, 581 N.W.2d at 316 (noting, generally, " '[i]t would be anomalous * * * to impose liability on the [government employer] for the very same acts for which [the employee] receives immunity.' ") (quoting *Watson*, 553 N.W.2d at 415).

### DECISION

Because Minn.Stat. § 573.02, subd. 1 (1996), the "murder exception" to the three-year limit on bringing wrongful-death actions, is not limited to actions against the murderer, we reverse the district court's application of that statute to Huttner's wrongful-death claims against Fischer and Ramsey County. Because Fischer's duty to verify Davis's claim that

he was no longer required to take medications was ministerial, we affirm the district court's determination that Fischer and Ramsey County are not entitled to official immunity and vicarious official immunity, respectively.

**Affirmed in part, reversed in part, and remanded.**

seeability should be given to the jury. *Id.* Davis was under a judicial commitment for mental illness and was on provisional discharge from confinement for that mental illness only so long as he complied with the requirements of intensive supervision by Fischer, who was well aware of Davis's ability to become suddenly, and extremely violent. Fischer had a range of potential control mechanisms available to her once she determined that Davis was not in compliance with prescribed medications. There is sufficient evidence in the record to create a question for the jury on these issues.