*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0686**

Jodi L. Toedter,
Trustee for the Heirs and Next of Kin of Susan Ann Gray,
Appellant,

vs.

Winona County,
Respondent,

Hiawatha Valley Mental Health Center,
Respondent.

**Filed January 17, 2017
Affirmed
Reilly, Judge**

Winona County District Court
File No. 85-CV-15-573

Philip G. Villaume, Jeffrey D. Schiek, Thomas H. Priebe, Villaume & Schiek, P.A., Bloomington, Minnesota (for appellant)

James R. Andreen, Erstad & Riemer, P.A., Minneapolis, Minnesota (for respondent Winona County)

Timothy P. Jung, William L. Davidson, Grant D. Goerke, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondent Hiawatha Valley Mental Health Center)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the district court's grant of summary judgment in a wrongful-death action, arguing that the district court erred by: (1) determining that vicarious official immunity protected respondent county; (2) granting judgment in favor of deceased's health care providers on appellant's negligence claims for failure to establish a duty of care; and (3) granting judgment against appellant on her claim for mutilation of a corpse. We affirm.

## FACTS

This appeal arises out of a wrongful death action initiated by appellant Jodi L. Toedter against respondents Winona County and Hiawatha Valley Mental Health Center (Hiawatha Valley) following the death of appellant's sister, Susan Ann Gray, in September 2013. Gray was born in 1965 and suffered from mental and physical impairments requiring hospitalization. In January 2013, Gray was admitted to a community group home, where she remained until June 2013 when she was discharged to her home in Winona County.

Houston County, where Gray previously resided, remained active in Gray's care for 60 days following her release from the group home and provided case management services to Gray in July and August 2013. A Houston County social worker assessed Gray and determined that she was eligible to receive services under the Community Alternatives for Disabled Individuals (CADI) waiver program, a voluntary program designed to enable individuals with disabilities to live in their own homes rather than in institutional care. The Houston County social worker coordinated several services for Gray, including medication services, transportation assistance, an emergency response system or "lifeline," and

"tracking" services, which ensured that a county social worker visited Gray's home on a daily basis to check in on her. Gray's civil commitment officially ended on August 8. Gray had "stabilized in the community" at that point and, at Gray's request, her Houston County tracking services were withdrawn at that time.

Gray was also referred to Hiawatha Valley for an Adult Rehabilitative Mental Health Services (ARMHS) program, which began on or around July 23 and was expected to continue for up to 26 weeks. The ARMHS program is a state-certified, medical-assistance-reimbursed service that provides voluntary intensive-case-management services for people with mental-health issues who qualify. Gray met with an ARMHS worker in July and August, but missed a scheduled appointment in late August and did not respond to her ARMHS worker's attempt to contact her. The ARMHS worker did not consider this unusual because he had the impression that Gray did not want to receive services anymore, which he testified "happens relatively often with voluntary services." The ARMHS worker also testified that Gray previously told him not to come to her home.

In September 2013, Gray became an established resident of Winona County and her care transferred from Houston County to Winona County. Prior to the transfer, Gray met with her Houston County social worker and a Winona County social worker for a transition meeting. Gray opted to continue using only three services in Winona County: busing services, the emergency-response system, and medication management, a voluntary program that permitted Gray to pick up her medications from a county facility on a weekly basis. On September 3, the Winona County social worker called Gray to discuss scheduling her medication pick-up. Gray did not return the phone call and missed a

3

scheduled appointment on September 10. The social worker attempted to contact Gray on September 20 and 24 but could not reach her. The social worker did not consider it "out of the ordinary" for a client not to return phone calls for two weeks, explaining that in Gray's case that she knew Gray was attending school full time.

Appellant attempted to call Gray in late September, but did not reach her. A police officer conducting a welfare check discovered Gray deceased in her home on September 24. Gray was last seen alive on September 8, and the date of her death is unknown. The autopsy report listed several immediate causes of death including cardiovascular disease, diabetes mellitus, obesity, a history of hepatitis C, and a history of depressive disorder and borderline personality disorder with suicidal ideation. Gray's body also suffered from post-mortem anthropophagy. Following Gray's death, appellant initiated a wrongful-death action asserting claims against each respondent for negligence, negligence per se, and unlawful mutilation of a body. Respondents moved for summary judgment, which the district court granted. This appeal follows.

**D E C I S I O N**

## I. Winona County is entitled to vicarious official immunity.

### a. Standard of Review

This court reviews a district court's summary judgment decision de novo to "determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). The evidence is viewed in the light most favorable to the party against whom judgment was

4

granted. *Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 18 (Minn. 2009). Judgment will be affirmed "if no genuine issues of material fact exist and if the court below properly applied the law." *Id.* Even if we "disagree with the district court's analysis of some issues, summary judgment will be affirmed if it can be sustained on any grounds." *Allianz Ins. Co. v. PM Servs. of Eden Prairie, Inc*., 691 N.W.2d 79, 82-83 (Minn. App. 2005).

The common-law-official immunity doctrine prevents public officials charged by law with duties that call for the exercise of "judgment or discretion from being held personally liable to an individual for damages," unless the official is guilty of a willful or malicious wrong. *Schroeder v. St. Louis Cty*., 708 N.W.2d 497, 505 (Minn. 2006) (quotation omitted). "Official immunity enables public employees to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006) (citation omitted). A county social worker qualifies as a public official for purposes of this analysis. *Olson v. Ramsey County*, 509 N.W.2d 368, 372 (Minn. 1993). If a social worker is protected under the official-immunity doctrine, then the county, as the social worker's employer, is entitled to share in the employee's immunity by way of vicarious official immunity. *Id*.

Generally, official immunity "turns on: (1) the conduct at issue; (2) whether the conduct is discretionary or ministerial . . . ; and (3) if discretionary, whether the conduct was willful or malicious." *Kariniemi v. City of Rockford*, 882 N.W.2d 593, 600 (Minn. 2016) (quoting *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 462 (Minn. 2014)). Whether immunity applies is a legal question reviewed de novo. *Kariniemi*, 882 N.W.2d

5

at 599. Winona County, as the party asserting immunity, bears the burden of establishing that the doctrine applies. *Meier v. City of Columbia Heights*, 686 N.W.2d 858, 863 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004).

### b. The conduct at issue involves the creation of a community-support plan.

Because only discretionary decisions are immune from suit, "[t]he starting point for analysis of an immunity question is the identification of the precise governmental conduct at issue," to determine whether the actions are discretionary or ministerial in nature. *Huttner v. State*, 637 N.W.2d 278, 284 (Minn. App. 2001), *review denied* (Minn. Nov. 13, 2001) (quotation omitted). The conduct at issue in this case involves the social worker's creation of, and attempts to finalize, a community-support plan to identify which voluntary CADI services Gray wished to continue in Winona County and to arrange providers for those services.

### c. The social worker's duties were discretionary in nature.

The next step in an official immunity analysis is determining whether the conduct involves ministerial or discretionary duties. *Majeski*, 842 N.W.2d at 462. "A discretionary act involves individual professional judgment, reflecting the professional goal and factors of a situation." *Huttner*, 637 N.W.2d at 284. By contrast, a ministerial act is "one that is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts. A ministerial duty leaves nothing to discretion; it is a simple, definite duty arising under and because of stated conditions." *Mumm*, 708 N.W.2d at 490 (citations and quotations omitted).

6

Appellant asserts that the social worker's acts were ministerial because they "did not require any judgment" on the social worker's part. Winona County argues that the social worker's conduct was discretionary because formulating a community-support plan for an individual's care is a function of the social worker's professional judgment.

We agree with the county. The social worker met with Gray to formulate a community-support plan for her care, coordinate services under the plan, and monitor those services. The Minnesota Supreme Court applied the doctrine of official immunity to a situation involving similar conduct. In *Olson*, the supreme court held that a social worker was protected by common-law official immunity because the formulation of a case plan for a child in need of protection and a determination of which services to provide to the family was a discretionary function. 509 N.W.2d at 371-72. The *Olson* decision stated that designing a suitable case plan "required the exercise of judgment in determining what services should be provided, who should provide them, their frequency, and the nature and extent of agency supervision." *Id*. at 372. The *Olson* court concluded that such activities "involved professional planning at the operational level in the discharge of an assigned governmental duty, and we have no difficulty holding that [defendant social worker is] protected by official immunity in her formulation of the [c]ase [p]lan." *Id. Cf. Huttner*, 637 N.W.2d at 285 (determining that a social worker's duty to verify that a client was taking prescribed medication during provisional discharge from commitment for a mental illness was not discretionary).

Minnesota statutory authority further buttresses our decision that the social worker's conduct rests on the exercise of professional judgment. Section 256B.49 provides that a

"case manager may delegate certain aspects of case management services to [other] individuals," but "may not delegate those aspects which require *professional judgment* including: (1) finalizing the coordinated service and support plan; (2) ongoing assessment and monitoring of the person's needs and adequacy of the approved coordinated service and support plan; and (3) adjustments to the coordinated service and support plan." Minn. Stat. § 256B.49, subd. 13 (b)(1)-(3) (2016) (emphasis added). This provision supports a determination that the legislature considers certain tasks, such as creating a community-support plan, assessing a client's needs under the plan, and adjusting the plan as necessary, to require the exercise of nondelegable professional judgment rather than ministerial execution.

That is precisely the conduct at issue here. In light of *Olson* and Minnesota Statutes section 256B.49, we conclude that the social worker was performing a discretionary function when she worked with Gray on the community-support plan. Because the social worker's duties were discretionary in nature, she is entitled to official immunity for her actions unless they were willful or malicious.

### d. The social worker's actions were not willful or malicious.

The last step of our analysis is determining whether the discretionary conduct was willful or malicious. *Majeski*, 842 N.W.2d at 462. "Discretionary conduct is . . . not protected if the official committed a willful or malicious wrong." *Elwood v. Rice County*, 423 N.W.2d 671, 679 (Minn. 1988). "Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991)

8

(citations and quotations omitted). "In the official immunity context, wilful and malicious are synonymous." *Id*. The existence of malice is generally a fact question, *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 n.5 (Minn. 1999), but a reviewing court may dispose of the question as a matter of law if there are no genuine issues of material fact. *See Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144-45 (Minn. 1986).

Appellant argues that the social worker acted willfully and maliciously by failing to complete the community-support plan before Gray's death. But willful or malicious conduct in the official immunity context "contemplates something more." *Rico*, 472 N.W.2d at 107. The public official "must have reason to know that the challenged conduct is prohibited," that is, "the exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is prohibited." *Id*. The record does not support a willful-or-malicious finding here. The social worker met with Gray in August to discuss the community-support plan, and attempted to contact her in September to finalize the plan. The social worker's supervisor testified that this process requires the cooperation of the client. It is undisputed that the CADI program is voluntary, and Gray was no longer under the terms of a civil commitment or required by law to participate. There is not a genuine issue of material fact concerning the existence of willful or malicious conduct on the part of the social worker. We therefore conclude that official immunity applies because the conduct at issue was discretionary and not willful or malicious.

### e. Winona County is entitled to vicarious official immunity.

Based on our determination that the social worker is entitled to official immunity, we further determine that Winona County, as her employer, is entitled to vicarious official

immunity. *See Olson*, 509 N.W.2d at 372 (recognizing that employee's immunity extends to employer through doctrine of vicarious official immunity). "Summary judgment is appropriate when a governmental entity has established that its actions are immune from civil liability." *Brown v. City of Bloomington*, 706 N.W.2d 519, 522 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Therefore, the district court did not err by granting summary judgment in Winona County's favor.

**II.    Appellant's negligence claims against Hiawatha Valley fail as a matter of law.[1]**

**a.  Hiawatha Valley was not negligent.**

"Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). To prevail on a negligence claim in a wrongful-death action, a plaintiff must prove: (1) the existence of a duty of care, (2) a breach of that duty, (3) a death, and (4) that the breach of the duty caused the death. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001). "Summary judgment is appropriate when the record lacks proof of any of the four elements" of negligence. *Kellogg v. Finnegan*, 823 N.W.2d 454, 458 (Minn. App. 2012). The only element presented to the court on appeal is the existence of a duty of care. "The existence of a legal duty [of care] is an issue for the court to determine as a matter of law." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001).

---

[1] Because we determine that Winona County is protected by vicarious official immunity, we do not separately address appellant's negligence claims as asserted against Winona County.

### i. Hiawatha Valley did not owe a duty of care to Gray on the basis of a special relationship.

Generally, there is no duty of care to protect another from harm, even when the individual "realizes or should realize that action on [his or her] part is necessary for another's aid or protection." *Bjerke v. Johnson*, 742 N.W.2d 660, 665 (Minn. 2007). However, a duty may be found if "(1) there is a special relationship between the parties; and (2) the risk [of harm] is foreseeable." *Id.* A district court considers certain factors when determining whether a special relationship exists, including "the vulnerability and dependency of the individual, the power exerted by the defendant, and the degree to which the defendant has deprived the plaintiff of her ordinary means of protection." *Becker v. Mayo Found.*, 737 N.W.2d 200, 213 (Minn. 2007). The existence of a special relationship giving rise to a legal duty is an issue of law that an appellate court reviews de novo. *Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn. 1999).

Appellant argues that Hiawatha Valley owed a duty of care to Gray based upon a special relationship established when Hiawatha Valley agreed to provide ARMHS services to Gray. A special relationship may be found in three scenarios:

> The first arises from the status of the parties, such as parents and children, masters and servants, possessors of land and licensees, and common carriers and their customers. The second arises when an individual, whether voluntarily or as required by law, has custody of another person under circumstances in which that other person is deprived of normal opportunities of self-protection. The third arises when an individual assumes responsibility for a duty that is owed by another individual to a third party.

*Bjerke*, 742 N.W.2d at 665 (citations and quotations omitted).

11

None of the *Bjerke* scenarios apply here. The first scenario is directed at "parents and children, masters and servants, possessors of land and licensees, and common carriers and their customers." *Id.* (quotation omitted). Minnesota courts have also found that a special relationship exists for those "who have custody of a person with dangerous propensities," *Delgado v. Lohmar*, 289 N.W.2d 479, 48384 (Minn. 1979), or for daycare providers. *Andrade v. Ellefson*, 391 N.W.2d 836, 842 (Minn. 1986). Hiawatha Valley does not fit within any of these categories. The second scenario arises when an actor exerts "physical custody or control" over another party. *Gilbertson*, 599 N.W.2d at 131. This relationship is frequently found where an institution "such as a hospital or jail has physical custody and control of the person to be protected." *Donaldson v. Young Women's Christian Ass'n of Duluth*, 539 N.W.2d 789, 792 (Minn. 1995). There is no evidence that Hiawatha Valley exercised physical custody or control over Gray, who engaged in ARMHS services on a voluntary basis and told her ARMHS worker that she wanted to live independently and that he could not visit her at home. The third *Bjerke* scenario requires the involvement of at least three parties. *See Ironwood Springs Christian Ranch, Inc. v. Walk to Emmaus*, 801 N.W.2d 193, 199 (Minn. App. 2011). Because appellant does not allege that respondents assumed a duty owed by Gray to a third person, a special relationship cannot arise out of the third scenario.

Appellant argues that the district court ignored an affidavit from her expert, a licensed professional clinical counselor and ARMHS supervisor, who opined that Hiawatha Valley deviated from the standard of care. However, an expert affidavit "cannot create a duty [of care] where none exists." *Safeco Ins. Co. of Am. v. Dain Bosworth Inc.*,

531 N.W.2d 867, 873 (Minn. App. 1995), *review denied* (Minn. July 20, 1995). While the expert states that respondents breached a duty, conclusory statements or promises to produce evidence at trial are not sufficient to create a genuine issue of material fact. *See Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995). To resist summary judgment, appellant must do more than "rest on mere averments" that a duty existed and that Hiawatha Valley violated that duty. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). The expert affidavit does not create a question of material fact regarding the existence of a special relationship between Hiawatha Valley and Gray.

Based upon our de novo review, we determine that there was not a special relationship between Hiawatha Valley and Gray under any of the three *Bjerke* scenarios and Hiawatha Valley was entitled to summary judgment as a matter of law. And because we determine as a matter of law that a special relationship does not exist, we do not consider whether the risk of harm to Gray was foreseeable. *See Bjerke*, 742 N.W.2d at 665 (requiring presence of both elements).

### ii. Hiawatha Valley did not owe Gray a duty of care under a contract theory of negligence.

Alternatively, appellant argues that it is not necessary to show a special relationship between Hiawatha Valley and Gray because a contractual duty of care existed. Appellant relies on *Lundgren v. Fultz*, 354 N.W.2d 25, 26-27 (Minn. 1984) for the principle that Hiawatha Valley owed a "professional duty" to Gray. *Lundgren* is inapposite. *Lundgren* addressed whether a psychiatrist had a duty to control the conduct of a third person to prevent injury to another. *Id.* *Lundgren* states that whether a duty exists to control the

13

conduct of a third person depends upon whether a "special relationship" exists between the professional and the third person, and whether the harm was foreseeable. *Id*. at 27. That factual situation is not present here. Appellant has not established a viable cause of action for negligence based on an alleged breach of a contractual duty of care and summary judgment was appropriate.

### b. Hiawatha Valley is not liable under a theory of negligence per se.

"[N]egligence per se is a form of ordinary negligence that results from violation of a statute." *Johnson v. Paynesville Farmers Union Co-op. Oil Co.*, 817 N.W.2d 693, 706 (Minn. 2012) (quotations omitted). The difference between negligence and negligence per se is that in the latter theory, "a statutory duty of care is substituted for the ordinary prudent person standard such that a violation of a statute is conclusive evidence of duty and breach." *Id*. (quotation omitted). "[B]reach of a statute gives rise to negligence per se if [(1)] the person harmed by [the statutory violation is] within the intended protection of the statute and [(2)] the harm suffered is of the type the legislation was intended to prevent." *Alderman's Inc. v. Shanks*, 536 N.W.2d 4, 8 (Minn. 1995) (quotation omitted). Because the statute "imposes a fixed duty of care, . . . its breach constitutes conclusive evidence of negligence." *Id*.

Here, appellant's negligence per se claim against Hiawatha Valley fails as a matter of law because appellant has not identified a statute which imposes a duty upon Hiawatha Valley. Appellant argues that Hiawatha Valley violated sections 256B.0623, subdivisions 2(a) and 2(a)(1), by failing to hold weekly meetings with Gray and by failing to help her during a crisis situation. *See* Minn. Stat. § 256B.0623, subds. 2(a), 2(a)(1) (2016). Chapter

14

256B provides for medical assistance for needy persons, and section 256B.0623 establishes adult rehabilitative-mental-health-service coverage, including the scope of the program, the definition section, eligibility requirements, and provider entity standards. *See* Minn. Stat. § 256B.0623, subds. 1-4 (2016). The subdivisions appellant references fall within the definitional section of the statute. *See id.*, subds. 2(a), 2(a)(1). Rather than imposing a statutory duty to host weekly meetings or help in emergency situations, this section merely defines "adult rehabilitative mental health services." *Id.* Appellant cannot satisfy the negligence per se factors and we therefore conclude that the district court properly granted summary judgment with respect to appellant's negligence per se claim against Hiawatha Valley.

**III.    Respondents are entitled to summary judgment on appellant's wrongful-mutilation claim.**

A cause of action may lie in tort where the willful and negligent conduct of a defendant leads to the disfigurement of a dead body. *Lindh v. Great N. Ry. Co.*, 99 Minn. 408, 409-10, 109 N.W. 823, 824 (1906). However, Minnesota courts have limited recognition of this cause of action to those instances in which the wrongdoing party is in actual possession of the dead body. *See, e.g.*, *Sworski v. Simons*, 208 Minn. 201, 207-08, 293 N.W. 309, 311-12 (1940) (coroner in possession of body); *Kingsley v. Forsyth*, 192 Minn. 468, 469-70, 257 N.W. 95, 96-97 (1934) (deputy coroner in possession of body); *Larson v. Chase*, 47 Minn. 307, 307, 50 N.W. 238, 238 (1891) (remains of body in tortfeasor's custody).

We are sympathetic to the loss that appellant no doubt suffered on account of her sister's death and the manner in which her body was found. However, because it is uncontested that respondents were not in possession of Gray's body following her death, the district court did not err in granting summary judgment in respondents' favor on appellant's mutilation claim. *See Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (holding that summary disposition is appropriate when "the record reflects a complete lack of proof on an essential element of the plaintiff's claim").

**Affirmed.**